Sandford L. Frey (State Bar No. 117058)
Dennette A. Mulvaney (State Bar No. 133423)
**LEECH TISHMAN FUSCALDO & LAMPL, INC.**
200 S. Los Robles Avenue, Suite 300
Pasadena, California 91101
Telephone: (626) 796-4000; Facsimile: (626) 795-6321
E-mail: *sfrey@leechtishman.com; dmulvaney@leechtishman.com*
Reorganization Attorneys for Hawkeye Entertainment, LLC
Debtor and Debtor-in-Possession

Jeffrey S. Shinbrot (State Bar No. 155486)
**THE SHINBROT FIRM**
15260 Ventura Boulevard, Suite 1200
Sherman Oaks, California 91403
Telephone: (310) 659-5444; Facsimile: (310) 878-8304
E-mail: *jeffrey@shinbrotfirm.com*
Attorneys for Sublessee, W.E.R.M. Investments, LLC

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

In re

**HAWKEYE ENTERTAINMENT, LLC**

Debtor and Debtor-in-Possession.

CASE NO.: 1:19-bk-12102-MT

**Chapter 11**

**MOTION FILED JOINTLY BY DEBTOR AND DEBTOR-IN-POSSESSION AND SUBTENANT, W.E.R.M, INVESTMENTS, LLC FOR ORDER AUTHORIZING THE USE OF THE LEASED PREMISES FOR VIRTUAL MUSIC EVENTS AND FILM SHOOTS PURSUANT TO THE LEASE AND/OR SECTION 363 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ADI MCABIAN IN SUPPORT THEREOF**

Date: September 9, 2020
Time: 10:30 a.m.
Ctrm: 302
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills, CA 91367

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

**TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; LESSOR, SMART CAPITAL INVESTMENTS I, LLC, SMART CAPITAL INVESTMENTS II, LLC, SMART CAPITAL INVESTMENTS III, LLC, SMART CAPITAL INVESTMENTS IV, LLC, AND SMART CAPITAL INVESTMENTS V, LLC, AS SUCCESSOR-IN-INTEREST TO NEW VISION HORIZON, LLC; AND OTHER PARTIES ENTITLED TO NOTICE:**

Hawkeye Entertainment, LLC, Debtor and Debtor-in-Possession ("Debtor") and Subtenant W.E.R.M Investments, LLC ("WERM" or "Subtenant") hereby move the Court for an Order authorizing use of the leased premises for virtual music events ("Virtual Events") and Film Shoots ("Filming" and together with the Virtual Events, the "Requested Uses"), pursuant to the Lease (as defined below) and Bankruptcy Code § 363, all of which will be conducted in accordance with applicable state and local Public Health Orders, as the same may be amended or modified ("Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT AND RELIEF REQUESTED

The Debtor and WERM are unfortunately compelled to once again seek the approval of this Court's to authorize use of their Premises for events which appear to be patently in the ordinary course of business, because the Lessor, Smart Capital Investments I, LLC, a California limited liability company, Smart Capital Investments II, LLC, a California limited liability company, Smart Capital Investments III, LLC, a California limited liability company, Smart Capital Investments IV, LLC, a California limited liability company, and Smart Capital Investments V, LLC, a California limited liability company, as successor-in-interest to New Vision Horizon, LLC (successor-in-interest to PAX America Development, LLC) (collectively "Landlord") refuses to offer a modicum of cooperation in furtherance of the efforts of the Debtor and WERM to continue in business and reorganize.

As the Court and parties in interest are keenly aware, the City of Los Angeles was effectively

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

shut down in March 2020 for all but essential businesses as a result of the recent orders and restrictions resulting from the Covid-19 health crises. The business of the Debtor's Subtenant, and, therefore the Debtor, are particularly affected by the crisis. As the Court is aware, the Debtor is a holding company for the Lease (as described below), which is sublet to a related party, WERM, which operates a popular and highly successful entertainment venue. As a result of the Covid-19 crises, the Mayor of the City of Los Angeles issued on March 15, 2020, a Public Order Under City of Los Angeles Emergency Authority which, among other things, mandated that all bars and nightclubs in the City of Los Angeles be immediately closed to the public. As a result, WERM, and in turn the Debtor, have been deprived of their primary source of income from use of the Premises. As the Court will recall, the Debtor and WERM requested temporary rent deferral, which was opposed by the Landlord (as discussed below).

While some restrictions in the City of Los Angeles and the State of California are slowly being lifted as a result of the slowing down of the infection rate by social distancing, stay at home orders, and a near complete shut down of all but essential businesses, it is likely that the last businesses to be allowed to reopen will be those that cater to large crowds, such as sporting complexes, concerts arenas and other entertainment venues. In anticipation of this, and in an effort to be able to begin to generate income as soon as is legally possible, the Debtor and its Subtenant have been exploring creative alternatives to generate income during the pandemic. Although the Court previously authorized use the leased premises to hold Religious Events, recent regulations have delayed the ability of the Debtor and WERM to avail themselves of that authorization, forcing the Debtor and WERM to come up with even more creative alternatives. To that end, the Debtor and WERM have been successful in making arrangements to make use of the Premises for Virtual Events and related filming. Based on the Landlord's history of objecting to any use that would assist WERM to maintain a viable business and the Debtor to reorganize, the Debtor and WERM are seeking Court authorization to permit such use out of an abundance of caution despite that they believe it is clearly within the authorized uses under the Lease.

In addition, for the same reasons, the Debtor is seeking authorization of the Court to permit continued use of the Premises for Filming. Since long before the Landlord's acquisition of the

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

Building and thereafter, the Exchange LA has long been used as a popular venue for filming movies, television shows, music videos, and commercials. A few examples over many years are the 1998 movie The Big Lebowski, the 2010 movie The Social Network, a Marvel Feature; television shows including, American Idol, CSI, The Mentalist, Animal Planet's Pit Boss, and Germany's Next Top Model; and music videos including Snoop Dogg and Dr. Dre. The Debtor submits that Filming at the Exchange LA is and has always been a related business that is used to promote and raise the profile of the Exchange LA.

Although the Debtor has historically contracted for use of the Premises for various film shoots since the inception of the Lease, and that has been well-known to the Landlord, the Landlord suddenly attempted to declare the Debtor in default as a result of such use for reasons which with the Debtor neither understands nor agrees. Therefore, in the event that the Landlord decides to object to yet another effort of the Debtor and WERM to make proper use of the Premises in accordance with the Lease, the Debtor leaves it to the Landlord to elaborate upon its reasons for objecting (or at least its ostensible justification).

While the Debtor believes that the proposed use of the leased Premises for Virtual Events and Filming are in the ordinary course of business and should not require Court approval[1], the prior history of the Landlord contending that the Debtor was in non-monetary default of the Lease, necessitates the filing of this Motion so as to ensure that the estate is using estate property in compliance with the Lease and applicable bankruptcy law.

By this Motion, the Debtor seeks an order from this Court, pursuant to § 363(c)(1) of the Bankruptcy Code, confirming the Debtor's authority to use the leased Premises for Virtual Events and Filming is in the ordinary course of the Debtor's business, or, alternatively, authorizing the Debtor to use the leased Premises for Virtual Events and Filming pursuant to § 363(b)(1).

## II.

## STATEMENT OF FACTS

### A. Background.

---

[1] As stated below, Section 1.17 of the Lease allows for the Premises to be used as a "nightclub, restaurant, entertainment venue and related lawful businesses."

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

The Debtor commenced this bankruptcy case by filing a Voluntary Petition ("Case" or "Chapter 11 Case") under Chapter 11 of the Bankruptcy Code on August 21, 2019 ("Petition Date") to protect its most valuable asset, the *Lease Agreement*, dated July 17, 2009 ("2009 Lease") as modified by the *First Amendment to Lease Agreement*, dated August 19, 2014 ("First Amendment"), and any and all options and extensions thereunder and related thereto ("Options" and together with the 2009 Lease and First Amendment, the "Lease"), between (i) Lessor, Smart Capital Investments I, LLC, a California limited liability company, Smart Capital Investments II, LLC, a California limited liability company, Smart Capital Investments III, LLC, a California limited liability company, Smart Capital Investments IV, LLC, a California limited liability company, and Smart Capital Investments V, LLC, a California limited liability company, as successor-in-interest to New Vision Horizon, LLC (successor-in-interest to Pax America Development, LLC) (collectively "Landlord") and (ii) the Debtor, for the premises described in the Lease on the real property, commonly known as the Pacific Stock Exchange Building, located at 618 South Spring Street, Los Angeles, California ("Premises") (the whole of which is sometimes referred to as the "Building").

By the terms of the Lease for the Premises, the Debtor is entitled to use the first four floors and the basement of the Building, which is in turn leased to a related company, W.E.R.M. Investments, LLC ("WERM" or "Subtenant"), that operates a popular and highly successful entertainment venue from the Premises, pursuant to the *Standard Sublease*, dated October 1, 2009 along with any and all extensions thereto ("Sublease"). The Premises are located in the Building (excluding the basement) on Spring Street in downtown Los Angeles.

**B. The Chapter 11 Bankruptcy**

Since the Petition Date, the Debtor has been in compliance with all Chapter 11 requirements. As the Court is aware, the Debtor timely filed a *Motion for an Order (1) Authorizing the Assumption of Non-Residential Real Property Lease and Sublease; (2) Determining the Debtor and Sublessor Not to Be In Breach or Default, Thereby Deeming Them in Compliance with Bankruptcy Code § 365(b)(1)(A) and Excusing the Debtor From Any Additional Compliance with § 365(b)(1)(B) and (C), and (3) Alternatively, Extending the Time Period Within Which the Debtor*

*May Assume or Reject Unexpired Non-Residential Leases and Executory Contracts [Docket No. 21]* ("Assumption Motion"). The Assumption Motion was deemed a contested matter and discovery is proceeding. An evidentiary hearing ("Evidentiary Hearing") on the Assumption Motion is scheduled to occur October 13, 14, 15 and 16, 2020.

In accordance with Bankruptcy Code § 365(d)(4)(B)(i), for good cause shown, and upon the consent of the Landlord, the deadline within which the Debtor may assume and/or assign or reject the Lease has been extended through the later of October 31, 2020 and the date which is the first business day after thirty-days following the last hearing date for the Evidentiary Hearing.

**C. The Pandemic**

Since the pandemic caused by Covid-19 struck in March 2020, the Debtor's subtenant, WERM, was compelled to cancel all of its scheduled events. In an effort to preserve the jobs of as many employees as reasonably possible in light of the forced shut down of WERM's business, WERM requested of the Debtor, and the Debtor requested from the Landlord, a temporary rent deferral. As the Court and parties in interest are aware, the Landlord refused any accommodation whatsoever.

Due to the pandemic shutdown and resultant inability to conduct business at the Premises, and the Landlord's unwillingness to negotiate, on April 4, 2020, the Debtor and WERM filed a joint *Motion for Order (1) Authorizing the Debtor to Hold Rent Payments in Trust and (2) Excusing or Deeming the Debtor and Sublessor in Compliance with Bankruptcy Code § 365(d)(3) [Docket No. 59]* ("Rent Deferral Motion"). By Order entered May 18, 2020 in connection with the Rent Deferral Motion, the Court ruled that the Debtor may deposit rent due for May and June 2020 into a separate Debtor-in-Possession account pending further Court determination of the impact of State of California and City of Los Angeles Covid-19 orders on the terms of the Lease *[See, Docket No. 77]*. Although the Court's limited relief was greatly appreciated, WERM and the Debtor elected not to avail themselves of the two-month impound order and have continued to pay post-petition rent to the Landlord.

As the Court and parties in interest may recall, WERM, in the ordinary course of its business,

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

had been permitting use of the Premises for religious events at the Premises on Sundays for many years prior to the Petition Date, until the Landlord abruptly served a notice of default, suddenly claiming, among other things, that such use was a purported breach of the Lease. Although the Debtor and WERM strenuously disagreed, the Debtor and WERM nevertheless temporarily ceased booking such events prior to the Petition Date until such time as there was an adjudication regarding the issues.

After the Petition Date and the State mandated closure, in a further effort to generate income during the pandemic, the Debtor once again approached the Landlord to withdraw its meritless objection to the use the Premises for religious events, with further assurances to the Landlord that such events would be limited in participant number, would utilize social distancing rules and guidelines, and would comply with local law.

However, as the Court is aware, the Landlord nevertheless refused to cooperate with the Debtor's request to use the Premises for religious events after the Petition Date during the pandemic. Although the Debtor and WERM believe that use of the Premises for religious events is within the permitted uses under the Lease, in the ordinary course of business, and does not require approval of this Court, the Debtor and WERM nevertheless, out of an abundance of caution, sought approval of this Court in the face of the Landlord's refusal to consent to such use.

To that end, the Debtor and WERM filed a Motion seeking Court authorization to use the Premises for religious service events in the ordinary course of its business and/or pursuant to Section 363 of the Bankruptcy Code *[Docket No. 81]* ("Religious Event Motion"). By Order entered July 17, 2020 *[Docket 108]* on the Religious Event Motion, the Court authorized use of the Premises for religious service events.

**D. Virtual Events and Filming**

Although the Court previously authorized use the leased premises to hold Religious Events, recent regulations have delayed the ability of the Debtor and WERM to avail themselves of that authorization, forcing the Debtor and WERM to come up with even more creative alternatives. To that end, the Debtor and WERM have been successful in making arrangements to make use of the Premises for Virtual Events and related filming. In addition, the Debtor is seeking authorization of

the Court to permit continued use of the Premises for Filming. As stated, the Exchange LA has long been used as a popular venue for filming movies, television shows, music videos, and commercials since long before the Landlord's acquisition of the Building and thereafter.

Although the Debtor has historically contracted for use of the Premises for various film shoots since the inception of the Lease, and that has been well-known to the Landlord, prior to the Petition Date, the Landlord suddenly attempted to declare the Debtor in default for reasons which the Debtor neither understands nor agrees. Therefore, in the event that the Landlord decides to object to yet another effort of the Debtor and WERM to make proper use of the Premises in accordance with the Lease, the Debtor leaves it to the Landlord to elaborate upon its reasons for objecting (or at least its ostensible justification).

While the Debtor believes that the proposed use of the leased Premises for Virtual Events and Filming are in the ordinary course of business and should not require Court approval[2], the prior history of the Landlord contending that the Debtor was in non-monetary default of the Lease, necessitates the filing of this Motion so as to ensure that the estate is using estate property in compliance with the Lease and applicable bankruptcy law.

**III.**

**USE OF THE PREMISES FOR VIRTUAL EVENTS AND FILMING IS IN THE ORDINARY COURSE OF BUSINESS AND CONSISTANT WITH THE USE PROVISION OF THE LEASE**

The use provision of the Lease, provides at Section 1.17:

*"1.17 Use of Premises: The Premises shall be used solely for the operation of a nightclub, restaurant, **entertainment venue and related lawful businesses** along with the storage use (collectively, the "Permitted Use"). The Premises may not be used for any other purpose without the Landlord's prior written consent. (Article 9)." [emphasis added].*

[2] As stated below, Section 1.17 of the Lease allows for the Premises to be used as a "nightclub, restaurant, entertainment venue and related lawful businesses."

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

In this case, the Lease does not expressly prohibit Virtual Events and/or Filming at the Premises. In fact, to the contrary, the Lease expressly authorizes the Debtor to use the Premises as an "*entertainment venue*" as well as "*related lawful business*." Virtual Events and Filming are clearly related to entertainment and not material different from the ordinary use of the Premises.

Under applicable California law, in the absence of a specific limitation on the use of leased premises, the tenant may use the property "*for any lawful purpose not materially different from that in which they are usually employed, to which they are adapted or for which they were constructed*." *Davidson v. Goldstein*, (1943) 58 Cal. App. 2d Supp. 909, 910. See also, *Keating v. Preston*, (1940)42 Cal. App. 2d 110, 115. Indeed, California Civil Code § 1997.210(b) provides that "*[u]nless the lease includes a restriction on use, a tenant's rights under a lease include any reasonable use of leased property*." California Civil Code §1997.210(b). See generally, California Civil Code §§1997.010, et seq., which apply "*to a restriction on use of leased property by a tenant under a lease of real property for other than residential purposes*." Any ambiguity in a restriction on use of leased property shall be construed in favor of unrestricted use. California Civil Code §1997.220.

In *Deutsch v. Phillips Petroleum Co.*, (1976) 56 Cal. App. 3d 586, the appellate court did not allow a landlord to rely upon an expansive construction of a "compliance with law" provision to terminate a lease. The parties' commercial lease of a gasoline service station provided that the tenant "*shall conduct its business on the said demise premises in conformity with all State or Federal Statutes and Municipal Ordinances applicable thereto*." *Id. at 588.* The landlord sought to evict the tenant based upon a final judgment in favor of the United States that found the tenant liable for federal and state antitrust violations. The Deutsch court recognized that "*[i]llegal or unlawful activity may be made the basis of a termination of a leasehold by either statute . . . or express covenant*" *[Id. at 589]*, but held that the "antitrust violation which is the basis of this suit is a violation of a statute which is directed to the conduct of defendant's business rather than to the premises which are the subject of this lawsuit." *Id. at 590*. The court held that the "*thrust of this covenant is directed to the functional use of the property*." In reaching its decision, the appellate

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

court held that the purpose of the use provision relied upon by the landlord "*is to protect the lessor's interest in the demised premises by limiting the functional use of the property*." Further, "*it serves as an additional assurance to the lessor that the lessee will utilize the demised premises in a manner conducive to the lessor's interest so as to secure the continued payment of the rental obligations*." *Id. at 591*. The antitrust violations did not, according to the court, go to the purposes of the use covenant. The court held that the result was consistent with California Civil Code § 1442, which "*abhors forfeitures*," requiring that forfeiture provisions are to be strictly construed against the party who asserts them. *Id. at 592*.

Similarly, in *Rowe v. Wells Fargo Realty Services, Inc*., (1985) 166 Cal. App. 3d 310, the landlords sought to use the "*compliance with law*" provision to terminate the lease after their attempt to force an increase in rental payments failed. Similar to this case, the landlords in *Rowe* sought to "*reaffirm*" certain building rules that they **had not previously submitted to the tenant**, including limitations on thermostat adjustments for heating and air conditioning. *Id. at 315*. About one month later, the landlords then sent a Three-Day Notice to Quit based, in part, upon the tenant allegedly '"*repeatedly us[ing] the premises for unlawful purpose . . . by tampering with the plenum temperature control of the heating and air conditioning system of the property so as to cause the temperature within the premises to lower below the limit allowed by the Department of Energy . . . .*'" *Id at 315.*

The tenant moved for summary judgment. As in the *Deutsch* case, the court did not find that the tenant's conduct constituted the type of unlawful conduct precluded by the use provision:

> Here, [the tenant's] alleged violation of the Department of Energy regulation does not threaten the physical safety of the property, nor is it the type of unlawful criminal activity which would stigmatize the premises. Further, [landlords] have not alleged facts to indicate their continued receipt of rent was in any way impaired merely because [the tenant] reset the temperature on the premises.

*Id. at 318 [footnote omitted]*.

The appellate court then held that the landlords' claim was meritless on several levels. The court held that *"[unless] the lease specifically limits the use of the property to a particular purpose, or that restriction is necessarily inferred from the language which is employed, the lease may not be*

*forfeited on account of the mere use of the property for another purpose even though that be an illegal use prohibited by statute, for the reasons said forfeitures of leases are not favored by the law*." *Id. at 318*. The court pointed out that the lease limits the use of the property to general office purposes and data processing and that was exactly the function for which the property was being used by the tenant.

It is respectfully submitted that Virtual Events and related filing and Filming are consistent with the use provision and applicable law and are a lawful use of the Premises.

**III.**

**SECTION 363(c)(1) OF THE BANKRUPTCY CODE ALLOWS THE DEBTOR TO ENTER INTO TRANSACTIONS IN THE ORDINARY COURSE OF BUSINESS**

Section 363(c)(1) of the Bankruptcy Code provides in pertinent part as follows:

"If the business of the debtor is authorized to be operated under section …1108… of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."

It is the Debtor's position that the use of the Premises for Virtual Events and Filming falls within the ordinary business of the Debtor and WERM, and, as such, does not require Court approval. The Debtor has no secured creditor with an interest in cash collateral, so the requirements of Section 363(c)(2) do not apply.

The Sublease (which is attached to the Assumption Motion for Court approval) use provision mirrors the use provision in the Lease. The use of the Premises by WERM, and by extension, the Debtor, through the Lease and Sublease, for Virtual Events and Filming are not inconsistent with the use provisions pursuant to the Lease and Sublease. However, given that the Landlord erroneous contentions in the August 5 Default Letter, the Debtor is compelled to seek Court approval to use the Premises for Virtual Events and Filming.

The Virtual Events and Filming will comply with all state and local guidelines and

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

requirements. Special permits are issued in connection with filming in Los Angeles through FilmLA. FilmLA is a 501(c)4 not-for-profit public benefit organization and the official film office of the City and County of Los Angeles. FilmLA holds exclusive contracts to provide film permit coordination services in Los Angeles.

Although this Motion is not a complete solution for the pandemic business restrictions, it is at least a start. Allowing the use of the Premises for Virtual Events and Filming provides WERM, and in turn the Debtor, with the opportunity to generate income on a limited basis.

## IV.

## SECTION 363(b)(1) OF THE BANKRUPTCY CODE ALLOWS THE DEBTOR TO ENTER INTO TRANSACTIONS OTHER THAN IN THE ORDINARY COURSE OF BUSINESS WITH COURT APPROVAL

Although the Debtor believes that permitting the Premises to be used for Virtual Events and Filming is a permitted use within the ordinary course of WERM's business and permitted under the Debtor's Lease, WERM and the Debtor request that the Court approve it pursuant to Section 363(b)(1) of the Bankruptcy Code which allows for approval after notice and a hearing.

## V.

## CONCLUSION

Due to the intervening impossibility of the Debtor and WERM to make use of the Premises and frustration of its intended purpose, there are no business operations currently being conducted from the Premises, and no direct resulting benefit to the estate at present from its use and/or occupancy of the Premises. In order to afford WERM and the Debtor the opportunity to generate income within a legally permitted use, it is submitted that cause exists to authorize the Debtor and WERM to use the Premises for Virtual Events and Filming. Pending the lifting of the State and local restrictions on operation of non-essential businesses which will permit the full reopening of the Premises and WERM's resumption of business at the Premises, the Debtor submits it is in the best interest of the estate to grant the relief requested. As stated, it is not a solution to the issues created

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

by the pandemic closure, but at least a start.

Based on the foregoing, the Movants respectfully request that the Court enter an order, pursuant to Section 363(c)(1), or alternatively Section 363(b)(1) authorizing WERM and the Debtor to use the Premises for Virtual Events and Filming, and determining that such use does not violate, nor constitute a breach of, or nonmonetary default under, the Lease and/or Sublease, and granting any other and further relief as may be just and proper.

DATED: August 19, 2020

**LEECH TISHMAN FUSCALDO & LAMPL, INC.**

By: /s/*Sandford L. Frey*
Sandford L. Frey
Reorganization Attorneys for Hawkeye Entertainment, LLC, Debtor and Debtor-in-Possession

**THE SHINBROT FIRM**

By: /s/*Jeffrey S. Shinbrot*
Jeffrey S. Shinbrot
Attorneys for Sublessee, W.E.R.M. Investments, LLC

LEECH TISHMAN FUSCALD0 & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 210
PASADENA, CALIFORNIA 91101
626.796.4000

**DECLARATION OF ADI MCABIAN**

I, Adi McAbian, declare as follows:

1. I am the President of Saybian Gourmet, Inc., the sole Member of the Debtor.[3]

2. My knowledge of the facts set forth herein is based on my personal knowledge and my review of the company's books and records. I am responsible for the day to day operations of the Debtor.

3. The Debtor commenced this case by filing a voluntary Chapter 11 petition on the Petition Date (August 21, 2019). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of creditors holding unsecured claims was not formed.

4. The Debtor’s most valuable assets are the Lease and Sublease for the Premises located in the Building. The Debtor is a holding company for the Lease for the Premises, which are sublet to a related entity, WERM.

5. WERM operates a popular event venue in downtown Los Angeles for private parties, corporate events, live entertainment, fashion shows and more. In connection with the business operations, the event venue regularly employs approximately fifty to seventy regular employees and independent contractors, as well as an additional approximately twenty security guards, six valet attendants and thirty marketing team members (which varies depending on the events). Literally thousands of people wait in line to pass the vigorous security clearance in order to enter a venue, which features of the most sought-after DJ’s and promoters in the world.

6. The Debtor filed this chapter 11 in order to protect its most valuable asset and reorganize its financial affairs. Since the filing of its case, I have devoted significant effort and time on bankruptcy administrative matters, as well as working with bankruptcy counsel for the lease assumption motion.

7. The evidentiary hearing on the contested lease assumption matter is scheduled to occur October 13, 14, 15 and 16, 2020. In accordance with Bankruptcy Code § 365(d)(4)(B)(i), for

[3] Capitalized terms shall have the meaning ascribed to them in the Motion.

good cause shown, and upon the consent of the Landlord, the deadline within which the Debtor may assume or assign or reject the Lease has been extended through the later of October 31, 2020 and the date which is the first business day after thirty-days following the last hearing date for the Evidentiary Hearing.

8. Since the pandemic caused by Covid-19 struck in March 2020, the Debtor's subtenant, WERM, was compelled to cancel all of its scheduled events. In an effort to preserve the jobs of as many employees as reasonably possible in light of the forced shut down of the WERM business, WERM requested of the Debtor, and the Debtor requested from the Landlord, a temporary rent deferral. As the Court and parties in interest are aware, the Landlord refused any accommodation whatsoever.

9. Due to the pandemic shutdown and the resultant inability to conduct business at the Premises, and the Landlord's unwillingness to negotiate, on April 4, 2020, the Debtor and WERM filed a joint *Motion for Order (1) Authorizing the Debtor to Hold Rent Payments in Trust and (2) Excusing or Deeming the Debtor and Sublessor in Compliance with Bankruptcy Code § 365(d)(3) [Docket No. 59]* ("Rent Deferral Motion"). By Order entered May 18, 2020 in connection with the Rent Deferral Motion, the Court ruled that the Debtor may deposit rent due for May and June 2020 into a separate Debtor-in-Possession account pending further Court determination of the impact of State of California and City of Los Angeles Covid-19 orders on the terms of the Lease *[See, Docket No. 77]*. Although the Court's limited relief was greatly appreciated, WERM and the Debtor elected not to avail themselves of the two-month impound order and have continued to pay post-petition rent to the Landlord.

10. As the Court and parties in interest may recall, WERM, in the ordinary course of its business, had been permitting use of the Premises for religious events at the Premises on Sundays for many years prior to the Petition Date, until the Landlord abruptly served a notice of default suddenly claiming, among other things, that such use was a purported breach of the Lease. Although the Debtor and WERM strenuously disagreed, the Debtor and WERM nevertheless temporarily ceased booking such events prior to the Petition Date until such time as there was an adjudication regarding the issues.

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 210
PASADENA, CALIFORNIA 91101
626.796.4000

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 210
PASADENA, CALIFORNIA 91101
626.796.4000

11. After the Petition Date and the State mandated closure, in a further effort to generate income during the pandemic, the Debtor once again approached the Landlord to withdraw its meritless objection to the use the Premises for religious events, with further assurances to the Landlord that such events would be limited in participant number, would utilize social distancing rules and guidelines, and would comply with local law.

12. However, as the Court is aware, the Landlord nevertheless refused to cooperate with the Debtor's request to use the Premises for religious events after the Petition Date during the pandemic. Although the Debtor and WERM believe that use of the Premises for religious events is within the permitted uses under the Lease, in the in the ordinary course of business and does not require approval of this Court, the Debtor and WERM nevertheless out of an abundance of caution sought approval of this Court in the face of the Landlord's refusal to consent to such use.

13. To that end, the Debtor and WERM filed a Motion seeking Court authorization to use the Premises for religious service events in the ordinary course of its business and/or pursuant to Section 363 of the Bankruptcy Code *[Docket No. 81]* ("Religious Event Motion"). By Order entered July 17, 2020 *[Docket 108]* on the Religious Event Motion, the Court authorized use of the Premises for religious service events.

14. While some restrictions in the City of Los Angeles and the State of California are slowly being lifted as a result of the slowing down of the infection rate by social distancing, stay at home orders, and a near complete shutdown of all but essential businesses, it is likely that the last businesses to be allowed to reopen will be those that cater to large crowds, such as sporting complexes, concerts arenas and other entertainment venues. In anticipation of this, and in an effort to be able to begin to generate income as soon as is legally possible, the Debtor and its Subtenant have been exploring creative alternatives to generate income during the pandemic.

15. Although the Court previously authorized use the leased premises to hold Religious Events, recent regulations have delayed the ability of the Debtor and WERM to avail themselves of that authorization, forcing the Debtor and WERM to come up with even more creative alternatives. To that end, the Debtor and WERM have been successful in making arrangements to make use of the Premises for Virtual Events and related filming. Based on the Landlord's history of objecting to any

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 210
PASADENA, CALIFORNIA 91101
626.796.4000

use that would assist WERM to maintain a viable business and the Debtor to reorganize, the Debtor and WERM are seeking Court authorization to permit such use out of an abundance of caution despite that they believe it is clearly within the authorized uses under the Lease.

16. In addition, for the same reasons, the Debtor is seeking authorization of the Court to permit continued use of the Premises for Filming. Since long before the Landlord's acquisition of the Building and thereafter, the Exchange LA has long been used as a popular venue for filming movies, television shows, music videos, and commercials. A few examples over many years are the 1998 movie The Big Lebowski, the 2010 movie The Social Network, a Marvel Feature; television shows including, American Idol, CSI, The Mentalist, Animal Planet's Pit Boss, and Germany's Next Top Model; and music videos including Snoop Dogg and Dr. Dre. The Debtor submits that Filming at the Exchange LA is and has always been a related business that is used to promote and raise the profile of the Exchange LA.

17. Although the Debtor has historically contracted for use of the Premises for various film shoots since the inception of the Lease, and that has been well-known to the Landlord, prior to the Petition Date, the Landlord suddenly attempted to declare the Debtor in default for reasons which the Debtor neither understands nor agrees.

18. While the Debtor believes that the proposed use of the leased Premises for Virtual Events and Filming are in the ordinary course of business and should not require Court approval, the prior history of the Landlord contending that the Debtor was in non-monetary default of the Lease, necessitates the filing of the Motion so as to ensure that the estate is using estate property in compliance with the Lease and applicable bankruptcy law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on August 19, 2020, at Los Angeles, California.

________________________
Adi McAbian

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 200 South Los Robles Avenue, Suite 300 Pasadena, California 91101.

A true and correct copy of the foregoing document entitled (*specify)* **MOTION FILED JOINTLY BY DEBTOR AND DEBTOR-IN-POSSESSION AND SUBTENANT, W.E.R.M, INVESTMENTS, LLC FOR ORDER AUTHORIZING THE USE OF THE LEASED PREMISES FOR VIRTUAL MUSIC EVENTS AND FILM SHOOTS PURSUANT TO THE LEASE AND/OR SECTION 363 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ADI MCABIAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 19, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Katherine Bunker** **kate.bunker@usdoj.gov**
- **Sandford L. Frey** **sfrey@leechtishman.com,** lmoya@leechtishman.com;dmulvaney@leechtishman.com
- **David S Kupetz** **dkupetz@sulmeyerlaw.com,** dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com
- **Jeffrey S Shinbrot** **jeffrey@shinbrotfirm.com,** sandra@shinbrotfirm.com
- **David A Tilem** davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com; DianaChau@tilemlaw.com
- **United States Trustee (SV)** **ustpregion16.wh.ecf@usdoj.gov**
- **Steven Werth** **swerth@sulmeyerlaw.com,** cblair@sulmeyerlaw.com;mviramontes@sulmeyerlaw.com;swerth@ecf.inforuptcy.com

**2.** **SERVED BY UNITED STATES MAIL**:
On August 19, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 19, 2020 | Lydia Moya | */s/ Lydia Moya* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000

**2. TO BE SERVED VIA UNITED STATES MAIL:**

~~Ahmed Al Goud~~
~~P O Box 10211~~
~~Dubai, UAE~~
*Returned/Unable to Forward*

Dentons US LLP
601 S Figueroa Street
Suite 2500
Los Angeles, CA 90017

Laurentiu Beada
10626 Valley Spring Unit 204
North Hollywood, CA 91602

New Vision Horizon LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Rene Vardapour
943 Andover Drive
Burbank, CA 91504

Robert Guichard
1578 35th Avenue
San Francisco, CA 94122

Saybian Gourmet Inc
14242 Ventura Blvd Suite 212
Sherman Oaks, CA 91423

Smart Capital Investments I LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments II LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments III LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments IV LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Smart Capital Investments V LLC
304 S Kingsley Drive
Los Angeles, CA 90020

Social Entertainment Group
17412 Ventura Boulevard
Suite 35
Encino, CA 91316

WERM Investment LLC
14242 Ventura Blvd. Suite 212
Sherman Oaks, CA 91423

William McAbian
14242 Ventura Blvd Suite 210
Sherman Oaks, CA 91423

Richard I. Wideman, Esq.
Attorney at Law
Frederick's Court # 232
485 Alisal Road
Solvang, CA 93463

U.S. Small Business Administration
Office of Disaster Assistance
14925 Kingsport Rd
Fort Worth, TX 76155

LEECH TISHMAN FUSCALDO & LAMPL, INC.
200 SOUTH LOS ROBLES AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101
626.796.4000