David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Steven F. Werth (CA Bar No. 205434)
  *swerth@sulmeyerlaw.com*
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Ave., Suite 3400
Los Angeles, California 90071
Telephone: 213.626.2311
Facsimile: 213.629.4520

Richard Wideman (CA Bar No. 41185)
  *riwlaw@gmail.com*
Frederick's Court # 232
485 Alisal Road
Solvang, California 93463
Telephone:  805.245.8916
Facsimile:  805.688.9424

Attorneys for
Smart Capital Investments I, LLC
Smart Capital Investments II, LLC,
Smart Capital Investments III, LLC,
Smart Capital Investments IV, LLC, and
Smart Capital Investments V LLC,
Landlord

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No. 1:19-bk-12102-MT |
| HAWKEYE ENTERTAINMENT, LLC, | Chapter 11 |
| Debtor. | **LANDLORD'S OPPOSITION TO DEBTOR'S AND W.E.R.M. INVESTMENTS, LLC'S MOTION FOR ORDER AUTHORIZING THE USE OF THE LEASES PREMISES FOR VIRTUAL MUSIC EVENTS AND FILM SHOOTS** |
| | **[Real Property at 618 S. Spring St., Los Angeles, CA]** |
| | DATE:    September 9, 2020<br>TIME:    10:30 a.m.<br>PLACE: Courtroom 302<br>          21041 Burbank Boulevard<br>          Woodland Hills, CA 91367 |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

Smart Capital Investments I, LLC, a California limited liability company, Smart Capital Investments II, LLC, a California limited liability company, Smart Capital Investments III, LLC, a California limited liability company, Smart Capital Investments IV, LLC, a California limited liability company, and Smart Capital Investments V, LLC, a California limited liability company (collectively, "Smart Capital") hereby opposes Hawkeye Entertainment, LLC's ("Debtor") and W.E.R.M. Investments, LLC's ("WERM") "Motion Filed Jointly By Debtor And Debtor-In-Possession And Subtenant, W.E.R.M, Investments, LLC For Order Authorizing The Use Of The Leased Premises For Virtual Music Events And Film Shoots Pursuant To The Lease And/Or Section 363 Of The Bankruptcy Code (Docket No. 130, the "Motion").

## I.

## INTRODUCTION

Once again, the Debtor seeks a comfort order from this Court, seeking blanket approval to enter into future agreements which are not attached to the Motion, and the terms of which are nowhere specified. The Debtor hopes by doing so to obtain court approval of a sublease of the Premises[1]—approval that must come from Smart Capital pursuant to Lease terms the Debtor agreed to long ago. The Debtor can operate the Premises pursuant to the Lease, but that is not enough; it wants more. This Motion is essentially identical to its prior motion before the Court seeking to use the Premises approval of a sublease of the Premises, and the same problem remains: the Debtor cannot comply with the terms of the Lease, and it does not want to seek consent to enter into a sublease as it is contractually required to do, so it seeks declaratory relief stating that deviation from the Lease is acceptable.

Once again, the Debtor files a motion that does not benefit the estate at all. The benefit would go solely to WERM. Even assuming the relief sought in the Motion would multiply WERM's revenue, not a single penny of that will inure to the benefit of the Debtor or its creditors. The Sublease states that WERM pays the Debtor's rent, and no more. The Debtor is a mere

_____

[1] All capitalized terms in this opposition have the meaning given them in the Motion.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  holding company, and the fact that the Debtor has not suffered a single dollar in lost revenue

2  during the Pandemic (as WERM continues to pay it rent) vividly demonstrates how the Debtor

3  would not benefit even if Exchange LA reopened as a nightclub.

4       And once again, the Debtor files a motion that is not really a motion of the Debtor, but a

5  motion of WERM.  WERM is not a creditor of this estate.  It does not appear on the Debtor's

6  schedules.  It filed a proof of claim with the claim amount blank.[2]  There is no dispute that WERM

7  is a consented-to subtenant pursuant to the Sublease—the Court approved that agreement years

8  ago.  But that is where the Court's jurisdiction ends.  The Court does not have jurisdiction over

9  WERM's business operations.  WERM has not filed schedules, does not file monthly operating

10  reports, and is completely opaque as to its finances.  It is as blank as its proof of claim.  Yet it

11  continues to seek the benefits of a debtor in possession.  It continues to file motions as if it were

12  the debtor in this case.  But it seeks orders that benefit it alone.

13       If the Debtor believed its own argument--that the events WERM seeks to conduct "appear

14  to be patently in the ordinary course of business" ("Motion, 2:19)--then the Debtor would not have

15  filed the Motion.  The Debtor does not need the blessing of this Court to conduct business in the

16  ordinary course.  But the proposed use of the Premises is not in the ordinary course.  The Debtor

17  seeks to enter into a sublease, and that it cannot do without Smart Capital's consent.  Further,

18  "Filming" is not a permitted use under the Lease *or* the Sublease.  The Debtor suggests it is Smart

19  Capital's obligation to explain why it does not approve of filming on the Premises (Motion, 4:13),

20  but the Lease speaks for itself.  The Lease states that the Debtor cannot enter into a sublease or

21  assignment without Smart Capital's prior written consent.[3]  The Debtor seeks an end-run around

22  that provision of the Lease.  Moreover, both the Lease and Sublease contain restrictive language as

---

24  [2] a true and correct copy of WERM's proof of claim is attached hereto as **Exhibit 1**.

25  [3] Section 12.1 of the Lease states, "Tenant acknowledges and agrees that any assignment or
26  subletting of all or any portion of the Premises shall required [sic] prior written consent of
Landlord which consent shall not be unreasonably withheld, conditioned or delayed subject to the
27  terms, covenants and conditions contained in this Lease."  A true and correct copy of the portion
of the Lease containing this provision is attached hereto as **Exhibit 2**.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SFW 2702300v3

to how the Premises may be used by the Debtor, and neither "filming" nor "virtual music events"
fall into that category.

## II.

### THE MOTION SHOULD BE DENIED

**A.**    **The Motion Seeks A Comfort Order Which Requires An Adversary Proceeding**

Federal Rule of Bankruptcy Procedure 7001 states that that "The following is are adversary
proceedings: … (7) a proceeding to obtain an injunction or other equitable relief…".  Fed. R.
Bankr. P. 7001(7).

The Motion, unlike the Debtor's prior motion relating to use of the Premises for religious
events, barely identifies the uses for which the Debtor seeks a comfort order.  The Motion seeks,
pursuant to Section 363(c)(1), an order "confirming the Debtor's authority to use the leased
Premises for Virtual Events and Filming".  Motion, 4:20.  "Virtual Events" is defined solely as
"virtual music events" (Motion, 2:9), and "Filming" is defined as "Film Shoots", which term is not
further defined.  Motion, 2:10.  The vagueness of the request is compounded by the absence of any
proposed contract, or the identity of the potential sublessee, thus preventing Smart Capital from
evaluating the Debtor's request for a sublease or assignment, as California law requires must occur
to give reasoned consent at all.

This type of order is a comfort order.  The Motion expressly states that this order is being
sought in connection with a future potential dispute which has not yet occurred—specifically,
Smart Capital asserting that this is a default under the Lease.  Motion, 4:18.  It is true that failure
to obtain consent of Smart Capital to sublease or assign is a breach under the Lease, and further
that "Filming" and "Virtual Events" do not fall within the scope of use of the Premises, and as
such, if the Debtor believes the law permits this use regardless it can attempt to obtain such relief
by way of an adversary proceeding.  It cannot obtain this relief by noticed motion.

Smart Capital made this same argument in connection with the Debtor's prior motion
relating to religious uses at the Premises, citing In re Automationsolutions Int'l, L.L.C., 274 B.R.
527 (Bankr. N.D. Cal. 2002) for the proposition that these types of orders are simply an "attempt
to adjudicate claims before they arise" and as such, are useless because "minimum standards of

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    procedural due process have not been met." Id. at 528.  The Motion does not define "virtual music

2    events" and "Filming" and this further prevents Smart Capital from understanding what the Debtor

3    is even requesting.  What kind of virtual music events?  What kind of filming?  Who knows?  The

4    Motion does not seek any limitation as to those defined terms.  Are the virtual music events

5    related to the use of the Premises as a nightclub?  Is the filming related to the use of the Premises

6    as a nightclub?  Discovery is necessary.  An evidentiary hearing is necessary.  The Motion should

7    be converted into an adversary proceeding so that process can occur.

8    **B.    Virtual Events And Filming Do Not Fall Within The Scope Of The Lease Or Sublease**

9         The Motion recognizes that Section 1.17 of the Lease restricts use of the Premises "solely

10   for the operation of a nightclub, restaurant, entertainment venue and related lawful businesses

11   along with the storage use," and that the Premises may not be used for any other purpose without

12   Smart Capital's written consent.  Motion, 8:21.

13        Do virtual music events fall within this definition?  The Debtor cites caselaw stating that

14   the absence of restrictions in a lease permits a tenant's use of the property for any lawful purpose,

15   which is not disputed here.  But the Lease *does* limit the Debtor's use, in Section 1.17.  The

16   Premises cannot be used (absent Smart Capital consent) for any purpose *other* than nightclub,

17   restaurant, entertainment venue, and related lawful businesses and storage.  The Sublease is even

18   more limited, and prevents WERM from operating the Premises for anything other than a night

19   club, gallery, and general office use, in Section 5 of the Sublease:

20             AGREED USE.  The Premises shall be used and occupied only for the

21             operation of a night club; gallery and general office use, but only to the

22             extent permitted by the City of Los Angeles and all agencies and

23             governmental authorities having jurisdiction thereof.

24    Exhibit 1.  The Motion nowhere explains how Virtual Events or Filming fall within the restriction

25   of use set forth in the Lease and the Sublease.  Both documents contain specific limitations on use.

26   Cases addressing leases which contain *no* specific limitation (such as those cited in the Motion)

27   are not relevant here.  The Debtor does not even limit "virtual music events" to events that bear

28   some relationship to the use of the Premises as a nightclub.  Moreover, the concept of a "virtual"

SFW 2702300v3

1    anything is definitionally the opposite of a "venue".  The Debtor requests a specific ruling that it is

2    not a breach of the Sublease to use the Premises for virtual music events and filming.  Motion,

3    13:4.  Yet the Motion makes no attempt to connect those uses to "a night club; gallery and general

4    office use".

5        If we take the Debtor at its word--that the Pandemic has resulted in the "impossibility of

6    the Debtor and WERM to make use of the Premises and frustration of its intended purpose"

7    (Motion, 12:20)—then the Debtor seeks to use the Premises for an *un*intended purpose.  Does

8    California law permit such unintended purpose?  That question cannot be answered by looking at

9    the four corners of the Motion, given the vague description of the contract(s) the Debtor seeks to

10    enter.  If the Debtor wants to use the Premises for an unintended purpose, it should be precise in

11    defining that use and arguing its case.  The Motion, which cites to no relevant caselaw and

12    contains numerous vague terms, does not satisfy this requirement.

13    **C.**    **The CUB**

14        Section 9.5 of the Lease requires the Debtor to comply with laws and regulations relating

15    to the Premises, and that includes a February 25, 2013, conditional use beverage letter from the

16    City of Los Angeles which amended a prior agreement permitting the on-site sale of alcoholic

17    beverages – the "CUB".  Unlike the Debtor's prior motion relating to use of the Premises, the

18    Motion does not mention the CUB.  The relevant portion of the CUB is attached hereto as **Exhibit**

19    **3**.

20        A review of the CUB shows that the Debtor may not be able to comply with certain of its

21    conditions if the Premises are used as the Debtor requests.  Those conditions include Condition

22    No. 15, which states:  "During the hours when the nightclub is in operation until one hour after

23    closing, a minimum of 150 off-site parking spaces shall be provided at within reasonable

24    proximity of the subject site.  Valet services shall be provided during the hours of operation and

25    valet service shall operate from the front entrance to the club with service through the time of

26    closing."  As the Debtor does not own or lease any other premises that would provide off-site

27    parking, this would be another expense that must be met, and further, it is unclear whether valet

28    service will be permitted during the COVID-19 Pandemic at all.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**D.** **The Motion Request Approval Of An Assignment Or Sublease Without Smart Capital's Consent**

This Court has already presided over a bankruptcy case of this Debtor (2013–2014) and motion to approve a settlement agreement (2014) in which one of the disputed issues was whether the Debtor could enter into the Sublease with WERM.  That issue is now resolved.  The Motion seeks similar relief now:  approval of a future sublease or assignment, but without Smart Capital's consent.

There is no dispute that Section 12.1 of the Lease prevents an assignment or sublease without Smart Capital's prior written consent.  The Debtor may respond that the contracts it seeks to enter with third parties will not fall into these categories.  But how is Smart Capital, or this Court, to know?  No proposed contract is attached.  If it were, such document might easily have "Sublease" or "Assignment" in its title.  If the Court grants the Motion, can the Debtor then enter into a Sublease without Smart Capital's consent, so long as it is for a "Virtual Event"?  Can the Debtor then make an assignment of a portion of the Premises?  At the very least, any order on the Motion should carve out that very specific potentiality:  *this order does not modify the obligations set forth in Section 12.1 of the Lease.*  But therein lies the problem:  even if the Court gives the Debtor the relief it seeks, it cannot unilaterally modify the Lease.  It can interpret California law, and it can enter declaratory relief by way of adversary proceeding.

California law defines the rights and obligations of a landlord regarding consent to enter into a sublease.  The Lease itself states that such consent will not be unreasonably withheld (Section 12.1) and further discusses how Smart Capital may refuse consent in certain specific circumstances (Section 12.3).  Caselaw provides that "commercially reasonable standards" for refusing to consent to a sublease relate to the protection of the lessor's legitimate interests, as a question of fact.  Kendall v. Ernest Pestana, Inc., 40 Cal. 3d 488, 500 (1985).  The landlord can consider the suitability of the proposed use, its legality, the need for the assignee or sublessee to alter the premises, and the landlord's belief that the particular business would not succeed at that location.  Id.  Further, failure to provide the underlying new sub-lease documents is a reasonable ground to refuse to consent to a sublease.  Pay 'N Pak Stores, Inc. v Superior Court, 210 Cal.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  App.3d 1404, 1410-1411 (6th Dist. 1989).

2       Here, the Motion provides no information to Smart Capital to even begin the process that

3  the Lease and caselaw state must occur:  a review of the proposed agreement and a reasonable

4  response based upon the protection of legitimate interests.  Smart Capital requests that the Motion,

5  if not denied, at least be continued so that it can conduct this analysis.

**III.**

**CONCLUSION**

8       The Motion should be denied.  In the alternative, Smart Capital requests that the Court set

9  the Motion for an evidentiary hearing.  In the alternative, Smart Capital requests that the Motion

10 be continued so that the Debtor can identify the agreements it seeks to enter so that Smart Capital

11 can evaluate whether to consent to them.

14 Dated:  August 25, 2020                   **Sulmeyer**Kupetz
                                           A Professional Corporation

16
                                           By:  _____
17                                              David S. Kupetz
                                                Steven F. Werth
18                                              Attorneys for Landlord

20       [Signatures Continue On Following Page]

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL  213.626.2311 • FAX  213.629.4520

By:

Richard Wideman, Esq.
Attorneys for Landlord

# EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1    Hawkeye Entertainment, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    19-12102-MT

---

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to **11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | W.E.R.M. Investments, LLC |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Jeffrey S. Shinbrot, APLC | |
| | Name | Name |
| | 15260 Ventura Blvd., Suite 1200 | |
| | Number        Street | Number        Street |
| | Sherman Oaks        CA        91403 | |
| | City        State        ZIP Code | City        State        ZIP Code |
| | Contact phone 310-659-5444 | Contact phone |
| | Contact email jeffrey@shinbrotfirm.com | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |

| 4. Does this claim amend one already filed? | ☑ No | | |
| --- | --- | --- | --- |
| | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ | |
| | | MM / DD / YYYY | |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| --- | --- |
| | ☐ Yes. Who made the earlier filing? _____ |

---

009

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. | **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____ |

| | | |
|---|---|---|
| 7. | **How much is the claim?** | $_____. **Does this amount include interest or other charges?**<br>☐ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | | |
|---|---|---|
| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Any claims that may arise in connection with the Debtor in this case |

| | | |
|---|---|---|
| 9. | **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br>**Amount of the claim that is secured:** $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | | |
|---|---|---|
| 10. | **Is this claim based on a lease?** | ☐ No<br>☑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ 0.00 |

| | | |
|---|---|---|
| 11. | **Is this claim subject to a right of setoff?** | ☐ No<br>☐ Yes. Identify the property: _____ |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☑ Yes. Check all that apply:

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
　　　　　　　　　　MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Adi McAbian |
|---|---|
| | First name          Middle name          Last name |
| Title | |
| Company | W.E.R.M. Investments, LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 14242 Ventura Blvd., Suite 212 |
| | Number          Street |
| | Sherman Oaks          CA          91423 |
| | City          State          ZIP Code |
| Contact phone | _____          Email _____ |

| Print | Save As... | Add Attachment | Reset |
|---|---|---|---|

# STANDARD SUBLEASE

**1.    PARTIES.**

This Sublease, dated for reference purposes only as October 1, 2009, is made by and between Hawkeye Entertainment, LLC., a California Limited Liability Company ("Sublessor") and WERM INVESTMENTS, LLC a California Limited Liability Company ("Sublessee").

**2.    PREMISES.**

Sublessor hereby leases to Sublessee and Sublessee hereby subleases from Sublessor for the term set forth below in paragraph 3, at the rental rate set forth in paragraph 4 below, and upon all terms and conditions set forth herein, that certain real property, including all improvements therein, and commonly known by the street address of 618 S. Spring St. ("Premises"), City of Los Angeles, located in the County of Los Angeles, State of California as defined by "Master Lease" dated July 19th, 2009 and any amendments thereto incorporated herein by reference between Sublessor and PAX America Development LLC.

**3.    TERM.**

3.1    The term of this Sublease ("Term") shall be for 120 months, commencing on the Rental Commencement Date as defined in the attached Master Lease, section 1.13 ("Commencement Date") and ending after one hundred twenty months (120) therefrom, unless sooner terminated pursuant to any provision hereof.

3.2    Notwithstanding anything to the contrary contained in this Sublease, the Commencement Date shall correspond with the Rent Commencement Date as defined in the Master Lease.

**4.    RENT.**

4.1    BASE RENT. On the first day of each month of the Term, Sublessee shall pay to Sublessor Base Rent for the Premises. Monthly Base Rental shall be in equal payments of $30,000.00 in advance. Upon the execution hereof, Sublessee shall pay Sublessor $30,000 as Base Rent for the first month's Base Rent that will apply upon the commencement of the Term.

4.2    ADDITIONAL RENT.  All Additional Rent Due under the Master Lease shall be the sole obligation of the Sublessee.

4.3    RENT DEFINED. All monetary obligations (except for the Security Deposit) of Sublessee to Sublessor under the terms of this Sublease are deemed to be rent ("Rent"). Rent shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

*Standard Sublease Agreement*
*Page 1 of 4*

5.  **USE.**

   AGREED USE. The Premises shall be used and occupied only for the operation of a night club; gallery and general office use, but only to the extent permitted by the City of Los Angeles and all agencies and governmental authorities having jurisdiction thereof.

7.  **MASTER LEASE.**

   7.1   Sublessor is the lessee of the Premises by virtue of a lease ("Master Lease"), a copy of which is attached hereto as Exhibit 1 and incorporated herein by this reference, wherein PAX America Development LLC. is the lessor ("Master Lessor").

   7.2   This Sublease is and shall be at all times subject to the Terms and Conditions of the Master Lease.

   7.3   During the Term and for all periods subsequent thereto with respect to obligations that have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor , each and every obligation of Sublessor under the Master Lease with respect to the Premise with the exception of Tennant Impovments, Tennant Work and obtaining of the Conditional Use Permit..

   7.4   The obligations that Sublessee has assumed and agreed to perform under Paragraph 7.4 hereof are hereinafter referred to as the "Sublessee's Assumed Obligations". The obligations that Sublessee has not assumed or agreed to perform under Paragraph 7.4 hereof are hereinafter referred to as the "Sublessor's Remaining Obligations".

   7.5   Sublessor hereby agrees for Sublessee's benefit to exercise Sublessor's diligent good faith efforts to require Master Lessor to perform Master Lessor's obligations pursuant to the Master Lease.

   7.6   Sublessor agrees to maintain the Master Lease during the Term, subject, however, to any earlier termination of the Master Lease without the fault of Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations or its obligations under the Sublease.

8.  **AMENDMENT.**

   This Sublease may not be modified or amended except by an instrument in writing approved by Sublessor and Sublessee and signed on their behalf.

9.  **HEADINGS.**

*Standard Sublease Agreement*
*Page 2 of 4*

The headings in this Sublease are for purposes of reference only and will not limit or define the meaning of any provision of this Sublease.

**10.   SUBLESSOR'S RIGHT OF ENTRY.**

Sublessor reserves the right to enter the Premises on reasonable notice and at reasonable times to Sublessee to inspect the Premises or the performance by Sublessee of the terms and conditions of this Sublease. In an emergency, no prior notice will be required for Sublessor's entry.

**11.   ENTIRE AGREEMENT.**

This Sublease hereto sets forth all the agreements between Sublessor and Sublessee concerning the Premises, and there are no other agreements either oral or written other than as set forth in this Sublease and, to the extent incorporated herein, the Master Lease.

**12.   INTERPRETATION.**

This Sublease has been fully negotiated at arms-length between the parties and after advice by counsel and other representatives chosen by the parties, and the parties are fully informed with respect thereto. No party shall be deemed the scrivener of this Sublease and the provisions of this Sublease and hereto shall be construed as a whole according to their common meaning and not strictly for or against any party.

//
//
//
//

[Signature Page to Follow]

*Standard Sublease Agreement*
*Page 3 of 4*

SIGNATURE PAGE

NOW, THEREFORE, Sublessor and Sublessee have executed this Sublease as of the date and year first hereinabove written.

**SUBLESSOR**

Signature:
Print Name: William Kerbian
Date: 10.1. 2009.

**SUBLESSEE**

Signature:
Print Name: Pd, McPGivn
Date: 10/1/2009

*Standard Sublease Agreement*
*Page 4 of 4*

# SUBLEASE AMENDMENT

THIS SUBLEASE AMENDMENT ("Agreement") dated as of October 1, 2019, is made between Hawkeye Entertainment, LLC, a California Limited Liability Company ("Sub-Landlord") and W.E.R.M. INVESTEMENTS, LLC, a California Limited Liability Company ("Subtenant").

## RECITALS

A. Sub-Landlord is the tenant under that certain Lease Agreement dated as of July 17, 2009 ("Original Master Lease"), pursuant to which PAX AMERICA DEVELOPMENT, LLC, a California Limited Liability Company("PAX") leased to Sub-Landlord the real property located in the City of Los Angeles, County of Los Angeles, State of California, described as 618 S. Spring Street, Los Angeles, portion of the basement, 1st, 2nd, 3rd and 4th floors, California 90014 ("Master Premises"). The entirety of the real property located at 618 S. Spring Street, Los Angeles, California 90014 is referred to herein as the "Property."

B. The Original Master Lease was amended by the following amendment: First Amendment to Lease Agreement dated August 19, 2014 ("First Amendment") by and between NEW VISION HORIZON, LLC, a California Limited Liability Company ("Master Landlord"), who became the owner of the Property pursuant to its acquisition of the Property at a foreclosure sale on December 20, 2010, and Sub-Landlord. The Original Master Lease, together with any amendments, is collectively referred to as the "Master Lease."

C. A copy of the Master Lease is attached and incorporated in this Amendment as Exhibit A.

D. Subtenant is the subtenant under that certain Standard Sublease dated as of October 1, 2009 ("2009 Sublease") by and between Sub-Landlord and Subtenant, pursuant to which Sub-Landlord leased to Subtenant the Premises.

C. A copy of the 2009 Sublease is attached and incorporated in this Amendment as Exhibit B.

D. This Agreement amends the 2009 Sublease. The 2009 Sublease and this Agreement are sometimes collectively referred to as the "Sublease". Sub-Landlord and Subtenant desire to enter into this Agreement on the terms and conditions set forth below.

## AGREEMENT

NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

### Section 1. Recitals

The Recitals set forth above are hereby ratified by Sub-Landlord and Subtenant as being true and correct and are incorporated into this Agreement by reference as though fully set forth herein.

### Section 2. Term

The term of the 2009 Sublease ("Term") is currently 120 months, commencing on January 1, 2015 as determined by the Rent Commencement Date established by the First Amendment, and maturing on December 31, 2025. The current term of the Master Lease commenced on January 1, 2015 and matures on December 31, 2025. The Master Lease contains an option to extend the term for one period of five lease years. Once exercised, the term of the Master Lease will be extended to December 31, 2030. The Term is hereby extended to coincide with the maturity date pursuant to the Master Lease. "Lease Year" as used herein means each of the consecutive twelve (12) calendar month periods during the Term beginning on the first day of the calendar month in which the Rent Commencement Date occurs.

1

## Section 3. Rent

### (a) Minimum Rent.

Subtenant will pay to Sub-Landlord as Minimum Rent, without deduction, setoff, notice, or demand, at 14242 Ventura Boulevard, Suite 210, Sherman Oaks, California 91423, or at any other place Sub-Landlord designated by notice to Subtenant, the sum equal to the Minimum Rent (as defined in the Master Lease and as adjusted in accordance therewith), in advance of the first day of each month of the Term.  If the Term begins or ends on a day other than the first or last day of a month, the rent for the partial months will be prorated on a per diem basis. Annual Minimum Rent increases shall be automatic without any requirement of notice from Sub-Landlord, and any acceptance by Sub-Landlord of a lesser amount than the amount actually due and payable shall not constitute a waiver by Landlord hereof.

### (b) Operating Costs.

All Additional Rent due under the Master Lease shall be the sole obligation of the Sublessee. Additional Rent will be payable as and when due by Sub-Landlord to Master Landlord. If the Master Lease provides for payment by Sub-Landlord of Additional Rent on the basis of an estimate, then as and when adjustments between estimated and actual Additional Rent are made under the Master Lease, the obligations of Sub-Landlord and Subtenant will be adjusted in the same manner. If this adjustment occurs after the expiration or earlier termination of the Term, the obligations of Sub-Landlord and Subtenant under this Subsection will survive this expiration or termination. Sub-Landlord will, on request by Subtenant, furnish Subtenant with copies of all statements submitted by Master Landlord of the actual or estimated Additional Rent during the Term.

## Section 4. Use of Premises

The Premises will be used and occupied only for the operation of a nightclub, restaurant, entertainment venue and related lawful businesses along with storage use in the basement area, unless agreed to by Sub-Landlord in writing.

## Section 5. Assignment and Subletting

Subtenant will not assign this Sublease or further sublet all or any part of the Premises without the prior written consent of Sub-Landlord (and the consent of Master Landlord, if this is required under the terms of the Master Lease).  Master Landlord has consented to Sub-Landlord's sublease of the Premises to Subtenant.

## Section 6. Other Provisions of Sublease

All applicable terms and conditions of the Master Lease are incorporated into and made a part of the Sublease as if Sub-Landlord were the landlord, Subtenant the tenant, and the Premises the Master Premises. Subtenant assumes and agrees to perform the tenant's obligations under the Master Lease during the Term to the extent that these obligations are applicable to the Premises. However, the obligation to pay rent and operating costs to Master Landlord under the Master Lease will be considered performed by Subtenant to the extent and in the amount rent and operating costs are paid to Sub-Landlord in accordance with Section 3 of this Agreement. Subtenant will not commit or suffer any act or omission that will violate any of the provisions of the Master Lease. Sub-Landlord will exercise due diligence in attempting to cause Master Landlord to perform its obligations under the Master Lease for the benefit of Subtenant. If the Master Lease terminates, at the option of Master Landlord, the Sublease will terminate and the parties will be relieved of any further liability or obligation under the Sublease. However, if the Master Lease terminates as a result of a default or breach by Sub-Landlord or Subtenant under the Sublease or the Master Lease, the defaulting party will be liable to the nondefaulting party for the damage suffered as a result of the termination. Regardless, if the Master

2

Lease gives Sub-Landlord any right to terminate the Master Lease in the event of the partial or total damage, destruction, or condemnation of the Master Premises or the building or project of which the Master Premises are a part, the exercise of this right by Sub-Landlord will not constitute a default or breach.

## Section 7. Attorney Fees

If either party commences an action against the other in connection with the Sublease, the prevailing party will be entitled to recover costs of suit and reasonable attorney's fees.

## Section 8. No Broker

Sub-Landlord and Subtenant each warrant that they have not dealt with any real estate broker in connection with this transaction. Sub-Landlord and Subtenant each agree to indemnify, defend, and hold the other harmless against any damages incurred as a result of the breach of the warranty contained in the Sublease.

## Section 9. Notices

All notices and demands that may be required or permitted by either party to the other will be in writing. All notices and demands by the Sub-Landlord to Subtenant will be sent by United States Mail, postage prepaid, addressed to the Subtenant at the Premises, and to the address in this Agreement below, or to any other place that Subtenant may from time to time designate in a notice to the Sub-Landlord. All notices and demands by the Subtenant to Sub-Landlord will be sent by United States Mail, postage prepaid, addressed to the Sub-Landlord at the address in this Agreement, and to any other person or place that the Sub-Landlord may from time to time designate in a notice to the Subtenant.

To Sub-Landlord: Hawkeye Entertainment, LLC, 14242 Ventura Boulevard, Suite 210, Sherman Oaks, California 91423.
To Subtenant: W.E.R.M. Investments, LLC, 14242 Ventura Boulevard, Suite 212, Sherman Oaks, California 91423.

## Section 10. Successors and Assigns

The Sublease will be binding on and inure to the benefit of the parties to it, their heirs, executors, administrators, successors in interest, and assigns.

## Section 11. Attornment

If the Master Lease terminates, Subtenant will, if requested, attorn to Master Landlord and recognize Master Landlord as Sub-Landlord under the Sublease. However, Subtenant's obligation to attorn to Master Landlord will be conditioned on Subtenant's receipt of a nondisturbance agreement.

## Section 12. Entry

Sub-Landlord reserves the right to enter the Premises on reasonable notice to Subtenant to inspect the Premises or the performance by Subtenant of the terms and conditions of the Sublease and, during the last four months of the Term, to show the Premises to prospective subtenant. In an emergency, no notice will be required for entry.

## Section 13. Late Charge and Interest

The late payment of any Rent will cause Sub-Landlord to incur additional costs, including the cost to maintain in full force the Master Lease, administration and collection costs, and processing and accounting expenses. If Sub-Landlord has not received any installment of Rent within five (5) days after that amount is due, Subtenant will pay five percent (5%) of the delinquent amount, which is agreed to represent a reasonable estimate of the cost incurred by Sub-Landlord. In addition, all delinquent amounts will bear interest from the date the amount was due until paid in full at a rate per annum ("Applicable Interest Rate") equal to the greater of (a) five percent (5%) per annum plus the then federal discount rate on advances to member banks in effect at the Federal Reserve Bank of San Francisco on the 25th day of the month preceding the date of the Sublease or (b) ten percent (10%). However, in no event will the Applicable Interest Rate exceed the maximum interest rate permitted by law that may be charged under these circumstances. Sub-Landlord and Subtenant recognize that the damage Sub-Landlord will suffer in the event of Subtenant's failure to pay this amount is difficult to ascertain and that the late charge and interest are the best estimate of the damage that Sub-Landlord will suffer. If a late charge becomes payable for any three (3) installments of Rent within any twelve (12) month period, the Rent will automatically become payable quarterly in advance.

## Section 14. Entire Agreement

This Agreement, together with the 2009 Sublease (the "Sublease") set forth all the agreements between Sub-Landlord and Subtenant concerning the Premises, and there are no other agreements either oral or written.

## Section 15. Time of Essence

Time is of the essence.

## Section 16. Consent by Master Landlord

Pursuant to the First Amendment, Master Landlord acknowledged and agreed that Sub-Landlord has sublet the Premises to Subtenant, and Master Landlord approved of and accepted Subtenant as a sublessee of the Premises.

## Section 17. Governing Law

This Agreement will be governed by and construed in accordance with California law.

## Section 18. Ratification

Sub-Landlord and Sub-Tenant hereby ratify and confirm all of the terms and conditions of the 2009 Sublease as modified by this Agreement.

## Section 19. Remainder of Sublease Unmodified

Except as set forth in this Agreement, the parties agree that the 2009 Sublease is unmodified and is in full force and effect. To the extent that the terms of the 20019 Sublease conflict with the terms of this Agreement, the terms of this

4

Agreement shall be controlling.


**Section 20. Counterparts**


The parties may execute several copies of this Agreement.  All copies of this Agreement bearing signatures of the parties shall constitute one and the same Agreement, binding upon all parties.  The parties may exchange counterpart signatures by facsimile or email and the same shall constitute delivery of this Agreement with respect to the delivering party.


IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

SUB-LANDLORD:

HAWKEYE ENTERTAINMENT, LLC, a California limited liability company


By:    ................................................................

Name:    ............................................................

Its:    ..............................................................




SUBTENANT:

W.E.R.M INVESTMENTS, LLC, a California limited liability company


By:    ................................................................

Name:    ............................................................

Its:    ..............................................................

5

# EXHIBIT 2

Case 1:19-bk-12102-MT   Doc 139   Filed 08/26/20   Entered 08/26/20 10:14:44   Desc
Main Document      Page 24 of 37

Case 1:13-bk-16307-MT    Doc 343-3   Filed 01/05/16   Entered 01/05/16 18:45:32   Desc
Exhibit 4 to Part 2    Page 76 of 121

Case 1:13-bk-16307-MT   Doc 226-1   Filed 08/27/14   Entered 08/27/14 17:15:04   Desc
Exhibit A    Page 56 of 85



11.5    Payment of Common Area Costs.  Following the end of the calendar year in which the Rent Commencement Date occurs and following the end of each calendar year thereafter, Landlord shall furnish Tenant a statement ("Annual Statement") covering the calendar year just expired, showing the total of the Common Area Costs and Tenant's Share of Common Area Costs for such calendar year. Within thirty (30) days after receipt of the Annual Statement, Tenant shall pay to Landlord Tenant's Share of Common Area Costs for such calendar year. If Landlord fails to furnish any Annual Statement to Tenant within six (6) months following the end of any calendar year, such failure shall constitute a waiver by Landlord of its right to collect any Common Area Costs from Tenant for said calendar year.  If Landlord fails to include any Common Area Cost in an Annual Statement and fails to correct said Annual Statement within six (6) months following the end of any calendar year, such failure shall constitute a waiver by Landlord to collect Tenant's Share of such Common Area Cost.

11.6    Information and Audit Rights.  On Tenant's request, Landlord shall provide to Tenant copies of contracts, invoices, paid receipts or other sufficient evidence to support the Annual Statement (regardless of whether Tenant undertakes a complete audit under this Section).  In addition, Tenant, or its agents, may conduct, at Tenant's expense, an audit of Common Area Costs for any calendar year within twelve (12) months of Tenant's receipt of the Annual Statement and any supporting documentation requested by Tenant pursuant to this Section.  Notwithstanding the foregoing, if Tenant's audit for any calendar year reveals that (a) a type or category of Common Area Costs not authorized by Section 11.4 has been included in Common Area Costs, or (b) Common Area Costs have been overstated for the audit year by more than five percent (5%), Tenant may also audit Common Area Costs for the calendar year preceding the audit year.  Tenant shall conduct its audit at Landlord's office in the continental United States during reasonable business hours on at least ten (10) days advance written notice.  Any such audit may include without limitation inspection of the work undertaken and all original contracts, work orders, invoices and other records for said expenses.  Landlord shall reasonably cooperate with Tenant in any such audit.  If Tenant's audit reveals that Common Area Costs for the audit year are overstated, then Landlord shall reimburse Tenant the amount of such overpayment within thirty (30) days of receipt of documentation evidencing such overstatement and, if such audit reveals that Common Area Costs for the audit year are overstated by more than five percent (5%) for such year, Landlord shall also reimburse Tenant for the reasonable expenses of such audit within thirty (30) days of receipt of receipts or other documentation detailing the costs for said audit.  In the event Landlord fails to timely make any such reimbursement required under this Section 11.6, Tenant shall be entitled to offset the amount due from Minimum Rent and Additional Rent next coming due.

ARTICLE 12- ASSIGNMENT AND SUBLETTING

12.1    Landlord's Consent Required.  Landlord and Tenant agree that the Building consists of an interdependent group of retail enterprises and that the realization of the benefits of this Lease, both to Landlord and Tenant, is dependent upon Tenant's creating and maintaining a successful and profitable retail operation in the Premises and that the "tenant mix" of the Building is vital to the realization of the benefits of this Lease, both to Landlord and Tenant. Tenant acknowledges and agrees that any assignment or subletting of all or any portion of the Premises shall required prior written consent of Landlord which consent shall not be unreasonably withheld, conditioned or delayed subject to the terms, covenants and conditions contained in this Lease.

12.2    Procedures. Should Tenant desire to enter into an assignment or sublease, other than any assignment or sublease which is expressly stated in this Article 12 not to require the prior written consent of Landlord, Tenant shall request, in writing, Landlord's consent to the proposed assignment or sublease at least thirty (30) days before the intended effective date of the proposed assignment or sublease, which request shall include the following (and shall be accompanied by a payment of Two Thousand Dollars



LA:176808595.5

7/17/09 01:46 PM

HAWKEYE 02193

Case 1:19-bk-12102-MT    Doc 139    Filed 08/26/20    Entered 08/26/20 10:14:44    Desc
Main Document      Page 25 of 37

Case 1:13-bk-16307-MT    Doc 343-3    Filed 01/05/16    Entered 01/05/16 18:45:32    Desc
Exhibit 4 to Part 2    Page 77 of 121

Case 1:13-bk-16307-MT    Doc 226-1    Filed 08/27/14    Entered 08/27/14 17:15:04    Desc
Exhibit A    Page 57 of 85



($2,000) to reimburse Landlord for costs incurred in connection with reviewing such proposed assignment or sublease): (a) if the assignment or sublease contemplates a change in the use of the Premises, the new proposed use of the proposed transferee; (b) a description of the identity, net worth and previous business experience of the proposed transferee; and (c) any further information relevant to the proposed assignment or sublease which Landlord may reasonably request. Within ten (10) days after receipt of Tenant's request for consent to the proposed assignment or sublease together with all of the above-required information, Landlord shall respond and shall have the right either to: (i) consent to the proposed assignment or sublease; or (ii) refuse to consent to the proposed assignment or sublease. Landlord's consent to a proposed assignment or sublease shall only be effective if and when Landlord has notified Tenant in writing that Landlord consents to such proposed assignment or sublease or Landlord fails to timely respond to a request for consent to any assignment or sublease in which event Landlord shall be deemed to have given its consent thereto. Upon Landlord's consent or deemed consent to a proposed assignment, Landlord, Tenant and the proposed transferee shall enter into and fully execute a written assignment and assumption agreement in a form reasonable acceptable to Landlord, Tenant and the proposed assignee. If Landlord refuses to consent to any proposed assignment or sublease, Landlord shall state in its response the detailed reason(s) for such refusal in reasonable detail.

   12.3    Standard for Consent.

   (a)    Tenant agrees that Landlord may refuse its consent to the proposed assignment or sublease on the following grounds: (i) the proposed transferee proposes to change the use of the Premises from the Permitted Use and Landlord reasonably withholds its consent thereto, (ii) the proposed transferee's financial condition, net worth or liquidity is inadequate to support all of the financial and other obligations of Tenant under this Lease or, with respect to any sublease, the obligation being incurred in connection therewith (in either event taking into account the financial condition, net worth and liquidity of any other remaining obligors under the Lease); (iii) the business reputation or character of the proposed transferee is not reasonably acceptable to Landlord; or (iv) the proposed transferee is not likely to conduct in the Premises a business of a quality substantially equal to that conducted by Tenant.

   (b)    Any purported assignment without Landlord's prior written consent shall be void and of no force or effect and shall not confer any estate or benefit on anyone. Consent to one (1) assignment by Landlord shall not be deemed to be consent to any subsequent assignment to any other party.

   12.4    Permitted Assignment/ Sublease. Notwithstanding anything in this Lease to the contrary, Tenant shall have the right without Landlord's consent, to enter into an assignment or sublease to any Affiliate or to any Person succeeding to substantially all of the assets of Tenant as a result of a consolidation or merger, or to a Person acquiring all or substantially all of the stock, other ownership interest or assets of Tenant ("Permitted Assignment"), provided that the Permitted Use will be conducted in the Premises and provided further that within fifteen (15) days after the effective date of any such transfer the assignee or sublessee executes and delivers to Landlord an instrument reasonably acceptable to Landlord containing an express assumption of all of Tenant's obligations under this Lease (or, in the case of a sublease, a copy of the sublease which shall provide that it is subject to the Lease, which copy may be redacted to delete economic terms).

   12.5    No Release; Form. No assignment or Permitted Assignment, whether with or without Landlord's consent, shall relieve Tenant and Guarantor hereunder from its covenants and obligations under this Lease. Tenant and Guarantor shall be relieved from its covenants and obligations under this Lease only through a written agreement between Landlord, Tenant and Guarantor, not to be unreasonably withheld. It is the expressed intent of the parties that any such release will be given by Landlord if the



LA:17690599.5

7/17/09 01:36 PM

HAWKEYE 02194

# EXHIBIT 3

,'LINN K. WYATT
CHIEF ZONING ADMINISTRATOR

ASSOCIATE ZONING ADMINISTRATORS
R. NICOLAS BROWN
SUE CHANG
LOURDES GREEN
CHARLES J. RAUSCH JR
FERNANDO TOVAR
MAYA E. ZAITZEVSKY

# CITY OF LOS ANGELES
CALIFORNIA



ANTONIO R. VILLARAIGOSA
MAYOR

DEPARTMENT OF
CITY PLANNING

MICHAEL J. LOGRANDE
DIRECTOR

OFFICE OF
ZONING ADMINISTRATION
200 N. SPRING STREET, 7TH FLOOR
LOS ANGELES, CA 90012
(213) 978-1318
FAX: (213) 978-1334
www.planning.lacity.org

February 25, 2013

Adi McAblan (A)
14242 Ventura Boulevard, Suite 212
Sherman Oaks, CA 91423

Pax America Development, LLC (O)
2333 Beverly Boulevard
Los Angeles, CA 90057

Elizabeth Peterson (R)
Elizabeth Peterson Group, Inc.
400 South Main Street, #808
Los Angeles, CA 90013

CASE NO. ZA 1995-0830(CUB)(PA4)
PLAN APPROVAL
618 South Spring Street (612-618 South
Spring Street)
Central City Planning Area
Zone   : C2-4D
D. M.  : 127.5A211
C. D.  : 14
CEQA : ENV 2012-3046-CE
Legal Description :  Lot 9, Block 16,
Ord's             Survey             tract

Pursuant to Los Angeles Municipal Code Section 12.24-M, I hereby <u>APPROVE</u>:

plans to permit the continued on-site sale of a full line of alcoholic beverages in
conjunction with an existing nightclub,

and retain the following conditions contained in Case No. ZA 1995-0830(CUB)(PA3)
issued on November 2, 2009 as modified herein (strike-out and double underline):

1.   All other use, height and area regulations of the Municipal Code and all other
applicable government/regulatory agencies shall be strictly complied with in the
development and use of the property, except as such regulations are herein
specifically varied or required.

2.   The use and development of the property shall be in substantial conformance with
the plot plan submitted with the application and marked Exhibit "A", except as may
be revised as a result of this action.

3.   The authorized use shall be conducted at all times with due regard for the
character of the surrounding district, and the right is reserved to the Zoning
Administrator to impose additional corrective Conditions, if, in the Administrator's

0031
023

CASE NO. ZA 1995-0830(CUB)(PA4)                                             PAGE 2

opinion, such Conditions are proven necessary for the protection of persons in the neighborhood or occupants of adjacent property.

4.    All graffiti on the site shall be removed or painted over to match the color of the surface to which it is applied within 24 hours of its occurrence.

   5. A copy of the first page of this grant and all Conditions and/or any subsequent appeal of this grant and its resultant Conditions and/or letters of clarification shall be printed on the building plans submitted to the Zoning Administrator and the Department of Building and Safety for purposes of having a building permit issued.

6.    Indemnification. The applicant shall defend, indemnify and hold harmless the City, its agents, officers, or employees from any claim, action, or proceeding against the City or its agents, officers, or employees to attack, set aside, void or annul this approval which action is brought within the applicable limitation period. The City shall promptly notify the applicant of any claim, action, or proceeding and the City shall cooperate fully in the defense. If the City fails to promptly notify the applicant of any claim action or proceeding, or if the City fails to cooperate fully in the defense, the applicant shall not thereafter be responsible to defend, indemnify, or hold harmless the City.

7.    The facility shall not exceed:

   a.    10,159 square feet of public area
   b.    1,736 square feet of offices

8.    **MODIFIED:** Hours of operation shall not exceed 7 p.m. 8 a.m. to 3 a.m. on any night the location is operation for business. However, the location is permitted to have up to 104 events per year where the location is permitted to close at 6:00 a.m. For those days the location is open until 3:00 a.m., dancing and music shall cease at 2:45 a.m. No after-hours uses of the establishment is permitted. For the days, the location is open until 6:00 a.m., dancing and music shall cease at 5:45 a.m. Live music/entertainment and televisions shall not be permitted in the outdoor patio.

A maximum of up to fifty (50) all ages events are permitted per year. The applicant shall notify the Los Angeles Police Department (LAPD) of each event at least one month prior to the event being held.

9.    Occupancy shall not exceed a maximum of 934 patrons.    Maximum occupancy shall be as determined by the Los Angeles Fire Department.

10.   Prior to any sign-off by the Zoning Administrator, the applicant shall submit plans to the Fire Department for approval of occupancy, access, and fire suppression.

CASE NO. ZA 1995-0830(CUB)(PA4)                                    PAGE 3

11. The applicant shall provide security at a minimum of 1 security guard per 50 patrons or less if approved by the Los Angeles Police Department (LAPD). The security guard shall patrol both inside and outside the nightclub during the hours and until one hour after closing. The security plan shall be reviewed by the Los Angeles Police Department and their recommendations shall be incorporated into the security plan. A copy of the security plan shall be provided to the case file.

12.    The Security Plan shall stipulate to the following:

   a.    State-licensed, uniformed security officers shall patrol the interior and exterior of the premises and all associated parking areas during all operating hours.

   b.    The security officers shall not double in his/her duties as managers or in any other capacity other than that of security officers. The security officers shall cooperate with any law enforcement conducting official duties. The security officers shall be made completely familiar with these conditions and implement them as necessary.

   c.    The security officers shall possess two-way communication devices so that they are in constant communication with one another. The security officers shall ensure no loitering occurs at the entrance or in any other location under the control of the applicant. Security officers shall be responsible for requesting individuals loitering to leave the area.

   d.    The security officers shall be employees of an independent security guard state-licensed company in good standing with the Department of Consumer Affairs. The security officers shall possess their permanent guard card permit at all times with photo identification and present them to law enforcement personnel upon request.

   e.    The security officer shall maintain a daily security log. They shall document each incident involving illegal activity or unusual observation(s) in the club, parking areas or on roving patrol and shall state how the incident(s) occurred. The logbook shall be produced when requested by law enforcement personnel.

   f.    Immediately terminate from service any security officer arrested for selling, possessing, storing, serving, keeping, using, manufacturing or giving away any controlled substance.

   g.    The operator shall not hire supervisory staff that has been convicted of a felony in the last five years.

   h.    The applicant shall contact the Vice Division quarterly to meet and discuss reports of incidents, if any, and also to discuss concerns. A log shall be maintained at the premises regarding these meetings.

i. Under no circumstances shall the operator allow patrons to bring in bottles of their own beverage or provide the patrons with set-ups of glasses, mixers and ice for use with the consumption of beverages brought on the site.

13. Exterior lights shall be installed such that the lights are directed onto the subject site and shielded to prevent the light source from being viewed by adjacent residential uses. Lighting shall be adequate so as to render objects or persons clearly visible.

14. All areas adjacent to the site over which the applicant has control and parking areas utilized shall be maintained free of litter. Litter shall be removed before, during and after each event.

15. **MODIFIED:** During the hours when the nightclub is in operation until one hour after closing, a minimum of ~~400~~ 150 off-site parking spaces shall be provided at ~~724 South Main Street~~ within reasonable proximity of the subject site. Valet services shall be provided during the hours of operation and valet service shall operate from the front entrance to the club with service through the time of closing. A copy of a valid agreement with the valet operator indicating the location and number of off-site parking spaces shall be submitted for the case file.

16. **DELETED:** ~~The applicant shall annually provide a copy of a one year lease to the file for the 78 parking spaces required showing that such parking is available from opening until closing of the nightclub.~~

17. All advertising (whether written or oral) of the nightclub shall include specific reference to the fact that valet parking is available.

18. The applicant shall post a sign at its entrance indicating the availability of valet parking.

19. When the 4th floor V-VIP area is in use, the VIP area on the 2nd floor (698 square foot "Green Room") shall be closed thereby not "adding" square footage or adding to the occupancy limit.

20. Any public telephones on the property shall be located within the building where employees and management of the facility can readily monitor them.

21. A 24-hour "hotline" telephone number for receipt of complaints from the community regarding the subject operation shall be distributed to the surrounding owners and occupants of all residential and commercial property and shall be posted on the site near the entrance of the facility and at the reception area. The sign shall include the name and phone number of the responsible person who shall respond within 24 hours. A log shall be maintained to record community complaints. The log shall be maintained on the premises and made available to Vice Division upon request.

CASE NO.  ZA 1995-0830(CUB)(PA4)                                    PAGE 5

22.    No alteration shall be made to the building facade pursuant to ZAI 145 (I-1000).
       Any sign placed on the facade for purposes of identifying the club is subject to
       approval by the Cultural Heritage Commission or the Department of City
       Planning, Office of Historic Resources.

       **DELETE**:    ~~The project shall be reviewed by the Redevelopment Agency for
       compliance with the Redevelopment plans~~. (Note: second condition no. 22 is a
       typographical numbering error).

23.    These Conditions of Approval shall be retained on the property at all times and
       shall be produced immediately upon the request of the Police Department.

24.    The applicant shall secure a City permit decal denoting approval of alcoholic
       beverage sales and/or dancing from a Planning Department public counter
       subsequent to the Zoning Administrator's signature on the Planning Department
       sign-off form and mount it on either the inside of the window of the subject site
       facing the front street or on the outside of the building (if inside mounting is not
       possible). The decal shall be visible at all times and mounted before the
       privileges granted herein are utilized.

25.    Within six months of the effective date of this determination, all personnel serving
       or dispensing alcohol and acting in the capacity of a manager of the premises
       shall attend a Standardized Training for Alcohol Retailers (STAR) session
       sponsored by the Los Angeles Police Department. All employees who serve
       alcoholic beverages shall attend initial or follow-up STAR classes every 24
       months. The business operator shall submit to the Zoning Administrator evidence
       from the Police Department that such training was completed within 30 days of
       the training event. All new employees, acting in the same capacity as above
       hired after the approval of this grant shall adhere to this requirement.

26.    Any music, sound or noise emitted from the subject business shall comply with
       the noise regulations in the Los Angeles Municipal Code. All outside personnel
       associated with music performance and/or acoustical sound shall be apprised of
       the City=s noise regulations and required to comply.

27.    The operator shall abide by all laws and manage the premises with due diligence
       to discourage narcotics and gang-related criminal activity. Immediately inform the
       LAPD if any person is observed engaged in narcotics or gang-related criminal
       activity on the premises.

28.    The business operator shall not permit any employee to solicit in or upon the
       licensed premises, the purchase or sale of any beverage, any part of which is
       intended for the consumption or use of such employee or to permit any
       employee. Additionally, any person(s) employed by the operator as a waitress or
       hostess (s) shall not be allowed to sit with patrons of the establishment.

29.    There shall be no patron or employee dancing or entertainment involving 12.70
       Adult Entertainment@ use, including nude or obscene presentations.

CASE NO. ZA 1995-0830(CUB)(PA4)                                    PAGE 6

30.    The sale of alcoholic beverages for consumption off the premises is prohibited. No alcoholic beverages shall be consumed on any property adjacent to the licensed premises under the control of the licensee.

31.    The business shall establish a designated driver program that may include signs on each table and bar alerting patrons of the program, or post signs in prominent locations.

32.    **MODIFIED:** The facility shall provide free hot coffee ~~between the hours of 12 midnight and 1:30 a.m.~~ beginning two hours prior to closing time until closing time to any person who requests it. Coffee signs shall be 12 inches by 16 inches in size and shall be placed behind all bars or in other prominent places, notifying customers that free coffee is available.

33.    Patrons shall not be allowed to enter the location without identification.

34.    There shall be no re-admittance to the venue.

35.    Electronic age verification devices which can be used to determine the age of any individual attempting to purchase alcoholic beverages or tobacco products shall be provided at each point-of-sale location. This device(s) shall be maintained in an operational condition and all employees shall be instructed in their use prior to the sale of any alcoholic beverage or tobacco product.

36.    A "No loitering or Public Drinking" shall be posted beside the front doors. The signs shall be in English and Spanish.

37.    No coin operated electronic, video or mechanical game machines nor billiard tables are permitted on the premises.

38.    There shall be no pay phones on the exterior of the property.

39.    The operator shall install and maintain surveillance cameras in all areas of the site, including entrances and exits. A minimum of four weeks worth of video coverage shall be maintained, of all common areas of the business. The footage shall be made available to the Police Department upon request.

40.    The business operator of the premises shall maintain on the premises, and present upon request to any law enforcement officer, a copy of the Business Permit, Insurance information and a valid emergency contact phone number for any valet or security service used by the business.

41.    Loitering is prohibited on or around the premises or the area under the control of the applicant.

42.    A manager shall be on-site at all times when the facility is operational.

43.   No employee or agent shall be permitted to accept money or any other thing of value from a customer for the purposes of sitting or otherwise spending time with customers while in the premises, nor shall the licensee provide, permit or make available, either gratuitously or for compensation, male or female patrons who act as escorts, companions or guest of and for the customer.

44.   The petitioner shall maintain a security log of events, incidents, and evictions. This log shall be maintained in the office on the premises at all times and shall be immediately produced upon request of any Los Angeles Police Officer.

45.   VIP Rooms

   a.   Door to said rooms shall be constructed of clear glass.

   b.   For each room, there shall be a 24-inch wide by 6-foot high clear glass sidelight. At no time shall these sidelight windows be obscured so as to prevent a clear view of any occupants of the room.

   c.   The rooms shall be equipped with sufficient lighting to illuminate and make easily discernable the appearance and activities of all persons in the booth at all times.

   d.   There shall be no "dimmer" type lighting controls on the interior of said rooms.

   e.   No obstructions shall be attached, fastened or connected to the glass doors or windows in rooms.

   f.   Door to said rooms will remain unlocked and shall not have any form of locking mechanism attached to the door.

46.   **MODIFIED:** Within one year of the effective date of this action, the applicant shall file a Plan Approval application and associated fees pursuant to Section 19.01-I of the Los Angeles Municipal Code at the Planning Department Public Counter. A public hearing shall be conducted with notification of all owners and occupants of property within a 500 foot radius. The purpose of the plan approval will be to review the effectiveness of , and compliance with the express terms of the Conditions of this grant. Upon review of the effectiveness of and compliance with the conditions, the Zoning Administrator may modify such conditions, delete or add new ones as appropriate and require a subsequent plan approval, as necessary.

   Any future operator or owner must file a new Plan Approval application and associated fees pursuant to Section 19.01-I of the Los Angeles Municipal Code at the Planning Department Public Counter. A public hearing shall be conducted with notification of all owners and occupants of property within a 500 foot radius.

47.    **MODIFIED:** The term of the grant shall be limited to a maximum of 3 10 years from the effective date of the instant grant. ~~and may not be extended under the provisions of the code for time extensions.~~ Thereafter, a new ~~Conditional Use~~ authorization is required to continue the use.

48.    Within 60 days of the effective date of this action, a covenant acknowledging and agreeing to comply with all the terms and conditions established herein shall be recorded in the County Recorder=s Office. The agreement (standard master covenant and agreement form CP-6770) shall run with the land and shall be binding on any subsequent owners, heirs or assigns.  The agreement with the conditions attached must be submitted to the Zoning Administrator for approval before being recorded. After recordation, a certified copy bearing the Recorder=s number and date shall be provided to the Zoning Administrator for attachment to the subject case file.

**Conditions Nos. 49 a through f are alcoholic beverage specific conditions previously volunteered by the applicant and shall be complied with and condition 49 e was volunteered by the applicant in connection with the instant grant:**

49.    **MODIFIED:** VOLUNTEERED CONDITIONS

   a.    There shall be no signs on the exterior advertising the sale of alcohol.

   b.    **DELETED:** ~~There shall be no "Happy Hour" or reduced price drinks allowed including, but not limited to, time periods during which patrons may purchase alcoholic beverages at a discounted price.~~

   c.    There shall be no minimum drink requirement for patrons.

   d.    The premises shall not be maintained nor operated as a private club.

   e.    All employees shall become familiar with these conditions as well as conditions attached to other permits and licenses. A copy of all conditions shall be provided to each and every employee.

   f.    The premises shall not operate as a hostess dance club, nor karaoke music studio.

   g.    The operator shall not allow "Promotional Nights." Promotional nights include, but are not limited to time periods during which female patrons may purchase beverages at a discount price encouraging patrons to come to the premises for alcoholic beverages after an entertainment event at another location, selling certain brands and/or types of beverages at a discounted price to bring attention to these brands and/or beverages.

   h.    **NEW:** Hours of alcoholic beverage sales shall be limited from 11:00 a.m. to 2:00 a.m.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):  **LANDLORD'S OPPOSITION TO DEBTOR'S AND W.E.R.M. INVESTMENTS, LLC'S MOTION FOR ORDER AUTHORIZING THE USE OF THE LEASES PREMISES FOR VIRTUAL MUSIC EVENTS AND FILM SHOOTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  August 26, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Katherine Bunker on behalf of U.S. Trustee United States Trustee (SV)
kate.bunker@usdoj.gov

Sandford L. Frey on behalf of Attorney Leech Tishman Fuscaldo & Lampl, Inc.
sfrey@leechtishman.com, lmoya@leechtishman.com;dmulvaney@leechtishman.com

Sandford L. Frey on behalf of Debtor Hawkeye Entertainment, LLC
sfrey@leechtishman.com, lmoya@leechtishman.com;dmulvaney@leechtishman.com

David S Kupetz on behalf of Interested Party Courtesy NEF
dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com

Jeffrey S Shinbrot on behalf of Interested Party W.E.R.M.Investments, LLC
jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

David A Tilem on behalf of Interested Party Courtesy NEF
davidtilem@tilemlaw.com,
DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;DianaChau@tilemlaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Steven Werth on behalf of Creditor Smart Capital Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, and Smart Capital Investments V LLC
swerth@sulmeyerlaw.com, cblair@sulmeyerlaw.com;mviramontes@sulmeyerlaw.com;swerth@ecf.inforuptcy.com

Steven Werth on behalf of Interested Party Courtesy NEF
swerth@sulmeyerlaw.com, cblair@sulmeyerlaw.com;mviramontes@sulmeyerlaw.com;swerth@ecf.inforuptcy.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  August 26, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

DAP 2705185v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


August 25, 2020 _____ Debbie A. Perez _____ */s/ Debbie A. Perez* _____

*Date*                              *Printed Name*                             *Signature*

DAP 2705185v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                     **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

2. SERVED BY U.S. MAIL

~~Ahmed Al Goud~~
~~P O Box 10211~~
~~Dubai, UAE~~  *Returned/Unable to Forward*

Laurentiu Beada
10626 Valley Spring Unit 204
North Hollywood, CA 91602

Rene Vardapour
943 Andover Drive
Burbank, CA 91504

Saybian Gourmet Inc
14242 Ventura Blvd Suite 212
Sherman Oaks, CA 91423

Social Entertainment Group
17412 Ventura Boulevard
Suite 35
Encino, CA 91316
Richard I. Wideman, Esq.
Frederick's Court #232
485 Alisal Road
Solveng, CA 93463

William McAbian
14242 Ventura Blvd Suite 210
Sherman Oaks, CA 91423

U.S. Small businss Administration
Office of Disaster Assistance
14925 Kingsport Rd.
Fort Worth, TX 76155

Dentons US LLP
601 S. Figueroa Street, Ste. 2500
Los Angeles, CA 90017

WERM Investment LLC
14242 Ventura Blvd., Suite 212
Sherman Oaks, CA 91423

Robert Guichard
1578 35th Avenue
San Francisco, CA 94122

DAP 2705185v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**