# FOR PUBLICATION

**FILED & ENTERED**

**FEB 19 2021**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fisherl    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Hawkeye Entertainment, LLC<br><br><br><br>Debtor(s). | Case No.: 1:19-bk-12102-MT<br><br>CHAPTER 11<br><br>**NOTICE OF MEMORANDUM DECISION ON DEBTOR'S MOTION FOR AN AWARD OF ATTORNEY'S FEES (Dkt. No. 232)**<br><br>Hearing Date<br>Date:      January 29, 2021<br>Time:      10:00 AM<br>Courtroom:  302 (Via Zoom.Gov.) |

On July 17, 2009, Hawkeye Entertainment, LLC (the "Debtor") entered into a lease agreement ("Lease Agreement") with Pax America Development, LLC ("PAX"). Pursuant to the terms of the Lease, the Debtor was entitled to use the first four floors and the basement of a building located at 618 South Spring Street, Los Angeles, California, more commonly referred to as the Pacific Stock Exchange Building (the "Property").

On September 30, 2013, the Debtor filed its first Chapter 11 petition, 1:13-bk-16307-MT ("Prior Bankruptcy Case"), where it sought to assume the Lease Agreement. The landlord at the

time was New Vision Horizon, LLC ("New Vision.) The motion to assume the lease was ultimately resolved through a settlement agreement ("Settlement Agreement").

The Property is now owned by Smart Capital, LLC ("Landlord" or "Smart Capital"). There have been ongoing disputes between Smart Capital and Debtor for years. This culminated in Smart Capital's service of a Notice of Default and Three-Day Notice on Debtor. The Debtor responded by filing this second chapter 11 case followed by a motion to assume ("Assumption Motion") the Lease Agreement and Sublease, to deem the Debtor and W.E.R.M. Investment, LLC ("W.E.R.M." or "Sublessor") not to be in breach or default and authorizing the Debtor to enter into a revised sublease with W.E.R.M.(Docket #21)("Assumption Motion"). The Landlord opposed the Assumption Motion, alleging defaults under the Lease Agreement, an inability to provide adequate assurance of future performance and seeking denial of any modification of the sublease. After a lengthy period of discovery, the Court conducted a trial, found that the Debtor was not in default of the Lease, and granted the Assumption Motion.

Before the trial was held on the Assumption Motion, the Debtor brought several motions that were contested: (1) Motion Authorizing the Debtor to Hold Rent Payments in Trust and Excusing or Deeming the Debtor in Compliance with §365(d)(3) (Dkt. No. 59), (2) Motion Authorizing the Use of the Leased Premises for Religious Service Events Pursuant to §363 (Dkt. No 81), (3) Motion Authorizing Post-Petition Financing Pursuant to §364(c) (Dkt. No. 126), and (4) Motion Authorizing the Use of the Leased Premises for Virtual Music Events and Film Shoots Pursuant to §363 (Dkt. 130) (collectively referred to as "Motions"). All were granted over the Landlord's opposition

Debtor's Counsel now moves for an award of $813,531.97 in fees and costs against the Landlord which the Landlord opposes.

1
2
3
4
5
6
7

The order granting the Assumption Motion in favor of the Debtor was entered on October 27, 2020 (docket # 230.) The motion for fees was then filed on November 6, 2020 (docket #232.) The motion is controlled by Rule 54(d) of the Federal Rules of Civil Procedure, as applied through Federal Rule of Bankruptcy Procedure 7054(a). The parties have submitted numerous exhibits, briefs and declarations and have not requested an evidentiary hearing. The issue will be resolved based on the parties' written submissions and oral argument.

8

*Basis for Attorney Fees*

9
10
11
12
13
14
15

The general rule is that the prevailing party is not entitled to collect attorney's fees from the losing party. Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443, 448 (2007).  This default rule can be overcome by an applicable statute or enforceable contract. Id. An otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under substantive, non-bankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise. Id.

16

*Does California Law Authorize Fees Here?*

17
18
19
20
21
22
23
24
25
26
27
28

Parties may agree to attorney fees and costs through California Code of Civil Procedure §§1021 and 1032. CCP §1021states in relevant part: "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys … is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."  Section 1032 (b) then provides that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  Costs are then defined in CCP §1033.5(a) as including "[a]ttorney's fees, when authorized by" contract or statute. Costs may include attorney's fees when authorized by contract, even when the action is not 'on a contract.'" In re Mac-Go Corp., 541 B.R. 706, 715 (Bankr. N.D. Cal. 2015); see also Asphalt Prof'ls Inc. v. Davis (In re Davis), 595 B.R. 818, 832 (Bankr. C.D. Cal. 2019).

California Civil Code §1717 then authorizes attorney's fees and costs in any action on a contract, "where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party."  While one of the functions of §1717 is to make uni March 30 at 10 amlateral attorney fee provisions reciprocal, <u>Associated Convalescent Enterprises v. Carl Marks & Co., Inc.</u>, 33 Cal. App. 3d 116 (Ct. App. 1973), courts also apply §1717 where attorney fee provisions are allowed for either party to recover. <u>See e.g.</u> <u>Sunnyside Dev. Co., LLC v. Opsys Ltd.</u>, 2007 U.S. Dist. LEXIS 63865 *2-3 (N.D. Cal. 2007) (the Court applied a §1717 to a lease agreement that read: "If any Party or Broker brings an action or proceeding involving the Premises to enforce the terms hereof or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorney's fees. . . .") ; <u>Turner v. Schultz</u>, 175 Cal. App. 4th 974, 979 (Ct. App. 2009) ( the Court applied §1717  "In the event any legal action or arbitration is commenced of any kind or character, to enforce the provisions of this Agreement or to obtain damages for breach thereof, the prevailing party in such action shall be entitled to all costs and reasonable attorney's fees incurred in connection with such action

Whether §1717 applies is based on whether the action or proceeding was "on a contract," not whether the attorney fee provision provides for unilateral or mutual fees. <u>The Ninth Circuit, in</u> Penrod v. AmeriCredit Financial Services, Inc., 802 F.3d 1084 (9th Cir. 2015) detailed the three conditions that must be met before §1717 applies. First, the action generating the fees must have been an action "on a contract." Second, the contract must provide that attorney's fees incurred to enforce it shall be awarded either to one of the parties or to the prevailing party. <u>Id.</u> And third, the party seeking fees must have prevailed in the underlying action. <u>Id.</u> at 1087-88. <u>Penrod</u> also reaffirmed that even in a bankruptcy proceeding, "under California law, an

action is 'on a contract' when a party seeks to enforce, or avoid enforcement of, the provisions of the contract." Id. at 1088.

*Do the Governing Contracts Provide for Attorney Fees?*

There are several provisions of the governing contracts that provide some basis for attorney fees in some situations. Section 22.11(q) of the 2009 Lease provides:

> In the event that . . . either Landlord or Tenant shall institute ***any action or proceeding*** against the other ***relating to the provisions of this Lease or any default hereunder***, the party not prevailing in such action or proceeding shall reimburse the prevailing party for its actual attorneys' fees, and all fees, costs and expenses incurred in connection with such action or proceeding, including, without limitation, any post-judgment fees, costs or expenses incurred on any appeal or in collection of any judgment. [emphasis added]

Similarly, Section 17 of the Settlement Agreement provides:

> Attorneys' Fees. Each Party hereto shall bear its own attorneys' fees and costs incurred in connection with the Bankruptcy Proceeding, the State Court Actions and this Agreement and the exhibits entered into in connection with this Agreement. ***In the event that any Party files or prosecutes any action to enforce or interpret the Agreement, or any action arising out of this Agreement***, the prevailing Party in any such action shall be entitled to recover from the non-prevailing Party all reasonable costs and attorneys' fees incurred therein, including, without limitation, the costs and expenses of any expert witnesses.[emphasis added]

The First Amendment to the Lease Agreement entered into in connection with the Settlement Agreement, provides, among other things, as follows:

24. Ratification. Landlord and Tenant hereby ratify and confirm all of the terms and conditions of the [2009] Lease as modified by the First Amendment.

26. Remainder Of Lease Unmodified. Except as set forth in this First Amendment, the parties agree that the [2009] Lease is unmodified and is in full force and effect.

The issues in this bankruptcy case so far have focused on the Lease Agreement and the enforcement of its terms. The Landlord is correct that the Settlement Agreement has not been directly at issue. One important issue is the definition of the phrase **"institute any action or proceeding against the other …"** as stated in the Lease Agreement. The second significant interpretation issue is the meaning of **"relating to the provisions of this Lease or any default hereunder."**

"*Action or Proceeding*"

There are several "actions or proceedings" that are relevant here, and the parties dispute whether this language applies to them. The first is the notice of default and three-day notice. Then there was the filing of the Debtor's bankruptcy petition and all of the administrative and bankruptcy specific tasks that come with filing bankruptcy. Then there were the four Motions that were brought separately and adjudicated prior to the trial on the Assumption Motion. Most significantly, there was a contested Assumption Motion.

Application of this provision is subject to the "ordinary rules of contract interpretation," which is governed by "the mutual intention of the parties at the time the contract is formed ...." Exxess Electronixx v. Heger Realty Corp., 64 Cal. App. 4th 698, 709 (Ct. App. 1998); Cal. Civ. Code §1636; Bank of the West v. Superior Court 2 Cal.4th 1254, 1264 (1992). When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. Civ. Code, § 1639. The words of a contract are to be understood in their ordinary and

popular sense" unless "used by the parties in a technical sense or a special meaning is given to them by usage." Cal. Civ. Code §1644; <u>Lloyd's Underwriters v. Craig & Rush, Inc.</u> 26 Cal.App.4th 1194, 1197–1198 (Ct. App. 1994) ("We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made").

California Code of Civil Procedure §22 defines "action" as an "ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Federal Rules of Bankruptcy Procedure Rule 9002 defines "action" similarly as "an adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter."

"Proceeding" has different meanings in different contexts. Narrowly, proceeding means an action or remedy before a court. <u>Zellerino v. Brown</u>, 235 Cal. App. 3d 1097, 1105 (Ct. App. 1991); <u>see e.g.</u>, <u>People v. Gutierrez</u> 177 Cal. App. 3d 92, 99-100 (1986) (Cal. Const., art. I, § 14 gives a right to an interpreter during proceedings "held before a judicial tribunal."); <u>Gibson v. County of Sacramento</u> (1918) 37 Cal. App. 523, 526 (1918) ("criminal proceeding" in former Pol. Code, § 4307 "means some authorized step taken before a judicial tribunal against some person" charged with a crime). A broad interpretation of proceeding means "[a]ll the steps or measures adopted in the prosecution or defense of an action." Black's Law Dictionary. A proceeding may also refer to a mere procedural step that is part of the larger action or special proceeding." <u>Lister v. Superior Court</u> 98 Cal. App. 3d 64, 70 ( Ct. App. 1979); <u>Aldrich v. San Fernando Valley Lumber Co.</u> (1985) 170 Cal. App. 3d 725, 742 (Ct. App. 1985) (<u>citing</u> <u>Larkin v. Superior Court</u>, 171  Cal. 719 (1916)) ("A motion in the superior court to

dismiss an action for want of prosecution is "[a] good illustration of what is meant by the term 'proceedings.'") .

While the meaning of the phrase "proceeding" is traditionally broader than "action," there is several limitations that is explicitly enumerated in the Lease Agreement. First, the words "any action or proceeding" are followed by the words "against the other." This means that not every legal proceeding would fall under this section of the agreement, rather, this section of the Lease Agreement is only applicable to those legal proceedings brought between the parties to this agreement. The provision also indicates that it applies only to a two-party dispute between these parties and not generally to a greater universe of entities. The next limitation is that the proceeding must relate "to the provisions of this Lease or any default" under the lease agreement. If a proceeding between the parties is not based on the terms of the Lease Agreement, then the neither party can recover attorney's fees and costs.

To the extent that the meaning of "proceeding" is similar to "action," this does not render either term superfluous. "Where general words follow specific words in a [contractual provision,] the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. Where the opposite sequence is found, i.e., specific words following general ones, the doctrine is equally applicable, and restricts application of the general terms to things that are similar to those enumerated.'" Barrett v. Superior Court 222 Cal.App.3d 1176, 1190 (Ct. App. 1990) (*ejusdem generis* doctrine is "an attempt to reconcile an incompatibility between specific and general words" so all words may be "construed together, and no words will be superfluous.") Since the general word "proceeding" follows the more specific term "action," the Court finds that the definition of "proceeding" is akin in nature to contested matters.

Applying the generally accepted definition of "action or proceeding," combined with the California and Federal Rule definitions indicates that a tribunal of some sort must be involved for an event to rise to the level of an action or proceeding under the Lease Agreement.

*Notice of Default & Three-day Notice*

Here, the Landlord served the Debtor with a notice of default and a three-day notice. This three-day notice is the precursor to an unlawful detainer action. See Code Civ. Proc., § 1161(2) No unlawful detainer claim was ever commenced because the Debtor filed bankruptcy shortly after the three-day notice was served.

Debtor seeks to characterize the three-day notice as the commencement of an action or proceeding especially because it specifically sought a forfeiture of the lease, relying on In re Windmill Farms, Inc., 841 F.2d 1467, 1470 (9th Cir. 1988). It details the efforts it made to respond to the Landlord's default notice and then to convince the Landlord to withdraw the three-day notice or to defer the filing of an unlawful detainer action, concluding that it had no option other than Chapter 11 once it failed in those efforts. The Landlord argues that Debtor could have waited for the unlawful detainer action to be filed and litigated the dispute in the Superior Court. By strategically choosing Chapter 11, it argues that the Debtor lost the ability to characterize this dispute as one permitting fee shifting under the terms of the Lease.

While Windmill Farms prohibited the assumption of a lease under §365 if the lease had been terminated under non-bankruptcy law prior to the order for relief, it also specifically permitted a determination of whether the termination can be reversed under California's anti-forfeiture provisions. Id. at 1472. This "permits the [trustee] the same opportunities to avoid forfeiture of a lease . . . that it would have received under state law absent the bankruptcy proceedings." *Id.* (citing Butner v. United States, 440 U.S. 48, 55 (1979)). Windmill Farms ordered the bankruptcy court on remand to determine whether the lease, if validly terminated by

the landlord, could have been saved from forfeiture by application of California Code of Civil

Procedure §1179, or any other anti-forfeiture provision of California law. The Court specifically

stated that if pre-petition forfeiture had been improper, the trustee's assumption of the lease

would be proper. <u>Windmill Farms</u> at 1471 (<u>citing</u> <u>City of Valdez v. Waterkist Corp.</u> (<u>In re</u>

<u>Waterkist Corp</u>.) 775 F.2d 1089, 1091 (9th Cir. 1985)). Thus, Debtor's theory that the

bankruptcy filing was its only viable option to respond to the three-day notice is not so. Whether

the Debtor defended an unlawful detainer action in the Superior Court or the right to assume the

lease in this court, it was entitled to a determination of whether the landlord's forfeiture was

valid or not. If the Landlord's assertion of a default and forfeiture claim were found to be invalid,

the other considerations of a lease assumption motion under §365 would proceed. The

bankruptcy filing was a strategic choice to which the Debtor was entitled, but not its only choice.

Debtor also argues that the three-day notice should be treated differently than general

notices of defaults because it is a necessary part of an unlawful detainer action. The notice of

default and three-day notice are required in order to bring an unlawful detainer action. This

would likely be considered a proceeding under the broad interpretation; however, the general

term follows the specific term. The term "proceeding" in this section of the Lease Agreement

must be construed similarly to the definition of the specific term "action" – meaning

"proceeding" must be similar in nature to a lawsuit. As the few cases on point discuss, notice of

defaults are generally not considered "actions" by themselves.

Generally, courts have not considered notice, by itself, to be considered an "action" or a

"proceeding," <u>See e.g.</u>  <u>Action Apartment Assn., Inc. v. City of Santa Monica</u>, 41 Cal. 4th 1232,

1250 (2007) (a "notice of eviction is a communication regarding prospective litigation, and, as

such, it is not necessarily part of a judicial proceeding"); <u>Wallace v. Busch Entm't Corp.</u>, 2013

U.S. Dist. LEXIS 11975 * 4 (S.D. Cal. 2013) ("Plaintiff contends that filing a Notice of Change

of Address (Doc. 59) should be remove this action from the reach of Rule 41.1. . . . Plaintiff's

notice is not a proceeding."); Chase Manhattan Bank v. Grasso, CV990173244, 2001 Conn.

Super. LEXIS 111 (Conn. Super. Ct.2001) (The sending of the notice, however, is not a

"judicial, administrative, or other action or proceeding against the debtor.").

The California Supreme Court in Lacrabere v. Wise, 141 Cal. 554 (1904) found that the

service of a three days' notice to make such payment or deliver possession of the premises is a

"condition precedent to the right to commence the [unlawful detainer] proceeding." The

California Supreme Court did not refer to this three-day notice as a proceeding; rather, it is

merely a prerequisite for commencing an unlawful detainer action.  Moreover, "[t]he notice's

purpose is to inform the tenant of the breach so the tenant can rationally choose whether to cure

the breach and retain possession, quit the property, or contest the allegations." Lee v. Kotyluk, 59

Cal. App. 5th 719, 731 (Ct. App. 2021). The primary concern being providing the tenant with the

opportunity to cure and retain possession. See Fifth & Broadway Partnership v. Kimny, Inc., 102

Cal.App.3d 195, 202 (Ct. App. 1980).  Similarly,  the Second Circuit Court of Appeals found

under New York's version of an unlawful detainer action "a § 711 notice is a prerequisite to,

rather than a part of, an Article 7 proceeding." Romea v. Heiberger & Assocs., 163 F.3d 111, 117

(2nd Cir. 1998) (citing J.D. Realty Assocs. v. Jorrin, 632 N.Y.S.2d 441, 444 (Civ. Ct. 1995)

("The three-day notice is not a pleading; rather, it is a notice to the tenant of what must be done

to forestall a summary proceeding.")

The three-day notice is merely a predicate to an unlawful detainer action. This notice was

intended to allow the tenant an opportunity to cure defaults prior to having to defend an unlawful

detainer action. If a tenant cures the default within three-days, an unlawful detainer action is

likely never filed; thus, there is no underlying action or proceeding to this condition precedent.

For the Court to find that a three-day notice constitutes an "action or proceeding" under the

Lease Agreement goes against how Courts, from coast to coast, have traditionally viewed similar notices; thereby, making the Debtor's interpretation anything but the "ordinary and popular" meaning. The Court finds that the notice of default and three-day notice cannot be considered an "action or proceeding" according to the terms of the Lease Agreement.

*The Commencement of the Bankruptcy Case*

The next act following the notice of default was the Debtor's bankruptcy filing. While a bankruptcy case is an "action or a proceeding" the scope of what is "against the other relating to the provisions of this Lease or any default" becomes the issue. The Debtor contends that it was left no other choice but to file bankruptcy in order to protect the Lease Agreement. While there might be benefits provided in the bankruptcy court that are not available in the state court (most notably the automatic stay), the Debtor could have protected its interests in the Lease adequately in the state court.

A bankruptcy proceeding in itself is not a proceeding or action against anyone and the law does not support generalizing all bankruptcy proceedings as arising out of a contract dispute where there has been a contract between the debtor and a creditor, even where that dispute is the precipitating factor for the bankruptcy. The administration of a bankruptcy case is different than "an action or proceeding" because of the variety of the parties involved, their differing objectives, and the various administrative requirements of Chapter 11. In the Debtor's current bankruptcy case, there have been seven proofs of claim filed against the estate which total approximately $2.2 Million. The Landlord asserts that these claims were largely included in the Debtor's first bankruptcy. The Debtor acknowledged that many of these debts are holdover claims from the previous claims but suggest that they were not cured in large part due to litigation that occurred in the first bankruptcy case eating away at what could be paid out to claim holders. An issue in the current case is how the Debtor is going to resolve these debts.

The Debtor has listed numerous other creditors and will need to confirm a plan dealing with all creditors, not just Smart Capital. Additionally, the bankruptcy case would not in and of itself be considered "on the contract" as required by §1717 because the bankruptcy case could have proceeded without the Court ever addressing the contents of the Lease Agreement, and confirming a Chapter 11 plan would not necessarily require interpreting the Lease Agreement. The Court finds that the filing of a bankruptcy petition itself and the ensuing general activities do not satisfy the requirements laid out in the Lease Agreement to be entitled attorney fees.

*Assumption Motion*

The central event that does qualify as an "action or event" is the Assumption Motion. A legal proceeding is any proceeding in which a law requires the proceeding in order to alter or protect a right, interest, duty, status, or obligation of legal significance"); Zellerino v. Brown, 235 Cal. App. 3d 1097, 1105 (1991) ("an action or remedy before a court"). According to this definition, and the definitions previously articulated, a motion within the larger confines of a bankruptcy case would constitute a proceeding even if the Court applied the narrow definition to this term.

Penrod v. AmeriCredit Financial Services, Inc., 802 F.3d 1084 (9th Cir. 2015), provides substantial guidance on the applicability of these Lease provisions in bankruptcy cases. In Penrod, a creditor argued that a proposed chapter 13 plan was not consistent with the creditor's contractual rights and therefore could not be confirmed. The debtor ultimately prevailed, and then sought reimbursement of attorneys' fees under the parties' contract. The Ninth Circuit held that the underlying litigation was indeed an "action on a contract" because the creditor had sought to enforce a claimed contractual right when it objected to confirmation of the chapter 13 plan. Id. at 1088. Since "[t]he only possible source of [AmeriCredit's] asserted right was the contract," and since the only issue in the litigation was whether the relevant contract provision

was in fact enforceable under its own terms or was made partially inapplicable in bankruptcy, the debtor had prevailed on a claim "on a contract" for the purposes of § 1717. Id.

In Bos v. Bd. Of Trustees, 818 F. 3d 486, 488 (9th Cir. 2016), a debtor who prevailed in a nondischargeability action brought under 11 U.S.C. §523(a)(4) for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," sought to recover attorney's fees under a contract against the moving creditor. Id. The Ninth Circuit distinguished its ruling in Penrod where the bankruptcy court was required to determine the enforceability of the agreement and found that the §523 action against Bos "in no way required the bankruptcy court to determine whether or to what extent the Trust Agreements or the Note were enforceable against Bos, or whether Bos had violated their terms." Id. at 490-91. Rather, the litigation only addressed whether the standard under §523(a)(4) forbade the debtor from discharging the debts everyone agreed he owed. Id.

Redwood Theatres, Inc. v. Davison (In re Davison), 289 B.R. 716, 724 (B.A.P. 9th Cir. 2003), similarly emphasized the need for an action to concern the enforceability of a contract. The Davison, the Court held that §1717 was not applicable because the complaint did not contain a breach of contract claim, and the only claim asserted was a nondischargeability claim based on fraud. Id. (relying on Santisas v. Goodin, 17 Cal. 4th 599, 615 (Cal. 1998).) The distinguishing factor is not the specific relief sought in the bankruptcy action but to what extent contract enforceability determines the outcome of the issue under the Bankruptcy Code.

In re Relativity Fashion, LLC, 565 B.R. 50 (Bankr. S.D.N.Y. 2017) is instructive on distinguishing between actions on a contract and matters unique to bankruptcy in a Chapter 11 context. In Relativity Fashion, a party sought reimbursement of attorney fees and expenses pursuant to a licensing agreement containing a fee shifting clause which they incurred during litigation against a creditor. This litigation took place in the context of a motion to enforce

implementation of a plan under 11 U.S.C §1142. The Court found that the dispute between the parties was "on a contract" for purposes of §1717 and granted an award for attorney's fees. The court reasoned that although Debtor's motion was brought under §1142, the sole basis for opposing the motion were the creditor's contractual claims.

The Assumption Motion was anything but a routine motion to assume a lease. After the Landlord filed an opposition to the Assumption Motion, the Court treated this as a contested matter, allowing parties to conduct extensive discovery, and set the matter for a five-day bench trial. Additionally, at the heart of the Assumption Motion are the same substantive issues that would have been addressed at any state court unlawful detainer action – which would have been considered an "action or proceeding." Penrod, Relativity, Redwood, and Bos all illustrate an important principle -- substance should prevail over form. Even if the proceeding is under the rubric of a bankruptcy procedure, the critical question may be to consider how to enforce a contract rather than considerations unique to bankruptcy.

### Was the Action or Proceeding On a Contract?

The question of whether an action is "on a contract" is liberally construed by the California courts. Turner v. Schultz, 175 Cal. App. 4th 974, 979 (Ct. App. 2009). So long as a dispute "involves" a contract, or "arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement," the dispute is an action "on a contract" for purposes of §1717. Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc, 211 Cal. App. 4th 230, 241-42, 149 (Ct. App. 2012). The California Supreme Court has explained that "[s]ection 1717 applies only to actions that contain at least one contract claim," and that "[i]f an action asserts both contract and tort or other

noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims." Santisas v. Goodin, 17 Cal. 4th 599, 615 (1998).

While a motion to assume a lease under §365 inevitably involves a contract, it does not necessarily follow that a motion to assume a lease would inevitably be considered "on a contract" for purposes of §1717. There are two questions presented in motions to assume leases: 1) was there a default and 2) if there was a default, does the debtor provide the creditor adequate assurance? Determining whether there is a default pursuant to a lease requires courts to decide matters based on the language in a contract between parties while a determination of whether a debtor provided adequate assurance is based largely on bankruptcy law. Thus, cases where a debtor is clearly in default and the only real issue litigated in the motion to assume a lease is whether the debtor provided sufficient adequate assurance may not necessarily be considered a proceeding "on a contract."  That is not the case here.

As in Penrod, the Landlord asserted its rights under the controlling contract at issue, the Lease Agreement, the only possible source of its rights. The Court addressed only issues arising from the Lease Agreement, and it did not need to address the issue of adequate assurance because of the conclusion about the Lease. The terms and rights of the parties under the Lease Agreement were central to every aspect of the Assumption Motion. If the Court had been required to address the issue of adequate assurance under §365(b)(1), there might be more room for disagreement that this motion to assume the lease was solely "on a contract." The Bankruptcy Code was simply a vehicle to resolve what can only be described as a contract dispute. The disputes in the Assumption Motion are more specific and individualized as compared to the more global issues involved in the Debtor's bankruptcy case. These disputes more typically reflect a traditional cause of action whose primary purpose is to resolve claims between parties.

The Landlord seeks to distinguish <u>Penrod</u> stating that how the Lease Agreement was at issue in the Assumption Motion differed from how the contract in <u>Penrod</u> controlled. However, the law surrounding what constitutes "on a contract" is unambiguously broad. "An action is more likely to be found 'on a contract' for purposes of [§1717] if the agreement is broad in scope or if the main thrust of the litigation is based on the contract." <u>Orozco v. WPV San Jose, LLC</u>, 36 Cal. App. 5th 375, 409 (Ct. App. 2019). "An action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) "involves" an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause." <u>Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc</u>, 211 Cal. App. 4th 230, 241-42 (Ct. App. 2012).

No matter how one characterizes the Assumption Motion, the terms of the Lease Agreement were at the core of this dispute. The entirety of the five-day trial focused on whether the Debtor was in default according to specific terms of the Lease Agreement. The Court never reached the issue of adequate assurance. Even though the remedy here, assuming a lease, is different than it would have been under an unlawful detainer action, the Court still dealt with, at its core, a contractual dispute. <u>See</u> <u>Kachlon v. Markowitz,</u> 168 Cal.App.4th 316, 347 (Ct. App. 2012) ("In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action.").

## *Motions Brought Pursuant to 11 U.S.C. §§363,364 & 365*

A final point is how the Court should characterize the Motions brought so far in the case. Debtor brought two motions under 11 U.S.C. §363 to use the Property to host religious services and to allow filming to take place for virtual events as well as a motion to authorize post-petition financing under 11 U.S.C. §364. Additionally, the Debtor brought a motion pursuant to §

365(d)(3) and § 105 authorizing the Debtor to hold rent payments in trust and excuse or deem the

Debtor in compliance with § 365(d)(3). The Landlord unsuccessfully objected to these Motions.

There is no question that there was some overlap between the issues in the §363 motions

and the Assumption Motion; however, there are some important differences. Most notably, the

relief sought in the §363 motions were based solely on bankruptcy law – the Debtor would not

have been able to seek or need to seek the relief sought in those motions but for the Bankruptcy

Code. The Debtor argues that the §363 motions would be similar to seeking declaratory relief in

a state or federal district court. As the Landlord argued in its objections to these motions,

pursuant to Federal Rule of Bankruptcy Procedure 7001, a party seeking declaratory relief must

do so through an adversary proceeding, which was never brought here. In the Court's rulings for

both §363 motions, the Court overruled the Landlord's objection on this point because it found

that the Debtor did not need to commence an adversary proceeding where the relief sought was

solely a determination of ordinary use under §363(b). The Court went on to apply law as it

relates to §363. While the terms of the lease certainly were consulted, there was no evidentiary

hearing and issues of the Debtor's need to use the space for alternative activities during the

pandemic were also in play. The Court did not grant declaratory relief here for the Debtor in

either of these motions. Any reference to the Lease Agreement was only incidental in order to

determine whether relief was appropriate under §363. The Court was not adjudicating the rights

of the parties pursuant to the Lease Agreement at that time.

Similarly, the motion pursuant to §365(d)(3) and § 105, authorizing the Debtor to hold

rent payments in trust and excuse or deem the Debtor in compliance with § 365(d)(3), involved

the Lease Agreement; however, any involvement of the terms of the Lease Agreement was

minimal. In this motion the Debtor sought to extend time for performance under the timeframe

enumerated in the Bankruptcy Code. The Court did not adjudicate the rights of the parties under the Lease Agreement; rather, the Court applied bankruptcy law.

Finally, without the Bankruptcy Code, the Debtor would not have needed to seek relief under 11 U.S.C. §364 for the Court to approve post-petition financing. It had nothing to do with the Lease Agreement.

The Motions relate more to the global concerns of administering the bankruptcy estate rather than the individualized contractual disputes that were addressed in Assumption Motion. The Court finds that these Motions are not "on a contract" nor do they relate enough to the Lease Agreement to warrant attorney's fees and costs. Accordingly, all fees and costs associated with bringing these Motions are denied. The attorney's fees and costs relating to other discovery motions or motions directly relating to the Assumption Motion are allowable.

*Prevailing Party*

The final requirement is the Debtor must be the prevailing party to have its fees paid. The determination of "prevailing party" for the purpose of reciprocal attorney's fees in California is guided by the California Supreme Court's decision in <u>Hsu v. Abbara</u>, 9 Cal. 4th 863, 876 (Cal. 1995) holding "the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims. . . ." The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party has succeeded and failed to succeed in its contentions."

"[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." Cal. Civ. Code §1717(b)(2). Under §1717 a party "prevails" on a contract claim if the party successfully resists an assertion of contract rights, even if the party does so by arguing "the inapplicability, invalidity, unenforceability, or nonexistence of the same contract." <u>N. Associates v. Bell</u>, 184 Cal.App.3d 860, 865, (1986).  Prevailing in a dispute over

the claimed application of a contract, where such contract contains a fee provision, is sufficient. This is because the party who unsuccessfully asserted contract rights would have been entitled to fees if it had prevailed in establishing such rights, and under §1717 that right must be mutual. Santisas v. Goodin, 17 Cal. 4th 599, 611 (1998).

Here the Court found that the Landlord failed to show there was any material default by the Debtor under the terms of the lease and granted the Debtor's motion to assume the lease. Even though the Court did not enter an order at the time stating the Debtor was the prevailing party, there simply is no other way to categorize the prevailing party other than who prevailed on the question of whether the lease was violated. The Debtor successfully refuted each allegation of default under the terms of the Lease Agreement. This requirement has been satisfied for purposes of the trial court proceeding. Accordingly, the Court finds that the Debtor is entitled to an award of attorney fees and costs pursuant to the Lease Agreement.

*The Award of Attorney's Fees and Costs*

Here the Debtor seeks $813,531.97 in attorney's fees and costs. This amount reflects not only the attorney's fees and costs associated with the Assumption Motion but also the fees and costs it incurred with the administration of the bankruptcy estate. As previously discussed, the Debtor's bankruptcy case itself is not an "action or proceeding" that would allow for the Debtor to recover an award of attorney's fees and costs. Smart Capital accurately states that it was generally cooperative in stipulations, motions to extend time, or routine bankruptcy administrative issues. Its focus was mainly on the operation of the premises and lease assumption issues. To allow the Debtor to recover the fees and costs associated with legal proceedings not placing the Lease Agreement directly at issue exceeds the scope of recovery that the Lease Agreement contemplates. Accordingly, and the Court will reduce the fee amount to reflect that the attorney's fees and costs associated with the Assumption Motion under CCC §1717 are

allowed. Attorney's fees and costs incurred in the course of administering the bankruptcy estate are disallowed.

The calculation of a reasonable attorney fees award begins with the lodestar figure, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Miller v. Los Angeles County Bd. of Educ., 827 F2d 617, 621 (9th Cir 1987) (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986). There is a strong presumption that the lodestar amount is reasonable. Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir 1987).

After making the computation, the district court then must assess whether it is necessary to adjust the presumptively reasonable lodestar figure based on the Kerr factors (Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)) that are not already subsumed in the initial lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 363-4 (9th Cir. 1996). The twelve Kerr factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) the awards in similar cases. Kerr, at 70 (9th Cir. 1975).

The time sheets provided for in Debtor's original motion go up only to the end of September 2020. (Docket No. 232 Ex. 4) The Debtor has since submitted its October time sheets in its supplemental briefing. (Dkt. No. 278 Ex. C). The Debtor seeks a total of $813,513.97 in attorney's fees and costs that it incurred through October 31, 2020.

As previously discussed, the Debtor is only entitled to attorney fees and costs related to the Assumption Motion and not the other categories requested in the motion. The Court has performed an independent line by line review of the Debtor's timesheets and took out attorney's fees and costs that were related to the bankruptcy case and entries that the Court deems too vague as to properly characterize as either a part of the bankruptcy case or the Assumption Motion. The specific entries that have been disallowed are detailed in the attached addendum.

The attorney's fees and the time spent are reasonable when the Court considers the difficulty of the questions being presented, the skill of counsel, and the amount of time that was needed in order to adequately prepare for this proceeding. The Court sees no further reason for reducing the Debtor's fee and cost award. The Court approves $605,937.40. in total for attorney's fees and costs that are to be paid by the Landlord.

The Debtor requested November fees at oral argument and is engaged in an appeal of the Assumption Motion Order. Neither party has been given an opportunity to discuss the fee application in any greater detail following the court's ruling on the applicable law. Either party can file a supplemental motion after the appeal is completed addressing specific time entries or additional work, and specific entries can be addressed then if the court has misunderstood any entries.

*Staying Judgment*

This ruling is final, subject to any change on appeal. Should Smart Capital seek to stay the payment of these fees, a separate motion should be brought within 30 days of the order being entered on this motion. The issues concerning a stay require a more extensive factual development and discussion than was provided at oral arguments on the motion.

*Conclusion*

For the reasons previously stated, the Court finds that the Debtor is entitled to be compensated by the Landlord for attorney fees and costs solely associated with the Assumption Motion. Attorney fees and costs associated with the filing and maintaining of the bankruptcy case, including the motions brought pursuant to 11 U.S.C. §§363, 364, and 365(d)(3) are denied. The rates and hours associated with the lease assumption motion are reasonable and the Court grants the Debtor an award of $605,937.40 in total for attorney's fees and costs that are to be paid by the Landlord. Debtor shall submit an order consistent with this ruling.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

| | Addendum | |
|---|---|---|
| | The Court's Reduction of Attorney's Fees Pursuant to the Reasoning Stated in the Memorandum Ruling | |
| Date | Task Description | Amount |
| 8/22/2019 | Correspondence with Marquez and Fern Campbell regarding case reassignment | $357.00 |
| 8/21/2019 | Prepare emergency Chapter 11 petition - Hawkeye | $1,485.00 |
| 8/21/2019 | Research LLC filings for Hawkeye Entertainment, LLC | $148.50 |
| 8/21/2019 | Preparation of chapter 11 petition; draft rider to petition; revise petition; review creditors; conference with client regarding filing | $1,904.00 |
| 8/21/2019 | Draft correspondence to landlord | $297.50 |
| 8/22/2019 | Review and compile US Trustee requirements for 7-day package | $495.00 |
| 8/22/2019 | Review correspondence from Marquez and attachments | $119.00 |
| 8/23/2019 | Lengthy correspondence to client re: debtor-in-possession requirement and UST guidelines | $495.00 |
| 8/23/2019 | Begin preparation of 7-day package for US Trustee | $891.00 |
| 8/26/2019 | Prepare UST forms for 7-day compliance | $990.00 |
| 8/26/2019 | Review insurance certificate re: coverage | $99.00 |
| 8/26/2019 | Receive and review order reassigning cases | $59.50 |
| 8/27/2019 | Email correspondence to client re: US Trustee requirements | $99.00 |
| 8/27/2019 | Prepare schedules, statement of financial affairs and other required filings | $742.50 |
| 8/27/2019 | Email correspondence from client re: UST requirements | $99.00 |
| 8/28/2019 | Receipt and review documents from client re: compliance with UST requirements | $495.00 |
| 8/28/2019 | Revise and finalize US Trustee 7-day package | $1,485.00 |
| 8/28/2019 | Review 7-day package; review 90 day forecast and P&Ls; conferences with Mulvaney regarding same | $1,011.50 |
| 8/29/2019 | Continue preparation of schedules and statement of financial affairs | $247.50 |
| 8/29/2019 | Meet with client re: finalizing schedules and statement of financial affairs | $742.50 |
| 8/29/2019 | Prepare supplement to UST 7-day package | $148.50 |
| 8/30/2019 | Revise schedules and statement of financial affairs | $247.50 |
| 8/30/2019 | Prepare for and attend IDI | $654.50 |
| 8/23/2019 | Prepare application to employ Leech Tishman Fuscaldo & Lampl and declaration in support | $1,287.00 |
| 8/27/2019 | Finalize application to employ Leech Tishman as counsel for debtor | $396.00 |
| 9/12/2019 | Edit format and prepare monthly operating report | $36.00 |
| 9/3/2019 | Correspondence from UST re: additional required documents | $99.00 |
| 9/3/2019 | Review documents from client responsive to UST requests | $495.00 |
| 9/3/2019 | Revise schedules and statement of financial affairs | $495.00 |
| 9/3/2019 | Compile information for MOR preparation for client | $198.00 |

| | | |
|---|---|---|
| 9/4/2019 | Multiple email correspondence re: UST requirements, lease, and sublease | $198.00 |
| 9/4/2019 | Finalize all required filings to complete bankruptcy filing | $396.00 |
| 9/4/2019 | Various correspondence with Marquez of UST regarding requesting information; preparation of information regarding same | $714.00 |
| 9/5/2019 | Correspondence with Marquez regarding issues with checks; follow up with client and Marquez | $297.50 |
| 9/11/2019 | Review August 2019 MOR | $198.00 |
| 9/25/2019 | Prepare for 341a hearing; review schedules, MOR etc. | $238.00 |
| 9/26/2019 | Attend 341a hearing; conference with K. Bunker afterwards | $476.00 |
| 9/4/2019 | Prepare declarations in support of application to employ bankruptcy counsel | $891.00 |
| 9/4/2019 | Revise and finalize employment application for Leech Tishman | $693.00 |
| 9/10/2019 | Review and revise LTFL Employment application | $833.00 |
| 9/12/2019 | Modify employment application | $833.00 |
| 9/13/2019 | Finalize employment application and declarations in support | $495.00 |
| 9/13/2019 | Prepare notice of application to employ counsel | $792.00 |
| 9/16/2019 | Prepare exhibits for employment application | $247.50 |
| 9/24/2019 | Finalize employment application | $396.00 |
| 10/4/2019 | Email correspondence from landlord counsel re: representation | $49.50 |
| 10/10/2019 | Review September 2019 MOR | $198.00 |
| 10/14/2019 | Review and administer September 2019 MOR | $148.50 |
| 10/15/2019 | Edit, finalize and E-file Monthly Operating Report | $36.00 |
| 10/15/2019 | Check docket re: employment application status | $99.00 |
| 10/25/2019 | Start preparation of notice of motion and motion to extend exclusivity periods | $693.00 |
| 10/28/2019 | Prepare and revise motion to extend exclusivity | $792.00 |
| 10/16/2019 | Review and revise LTFL employment order | $476.00 |
| 10/14/2019 | Prepare order authorizing employment of counsel for debtor | $594.00 |
| 10/16/2019 | Prepare declaration of non-opposition to motion to employ counsel for debtor | $297.00 |
| 10/16/2019 | Prepare notice of lodgment re: order approving employment of counsel for debtor | $198.00 |
| 10/16/2019 | Prepare professional fee statement number 1 (August 2019) | $495.00 |
| 10/16/2019 | Prepare notice of application to employ special litigation counsel | $693.00 |
| 10/17/2019 | Review and revise invoices re: professional fee statement submission | $148.50 |
| 10/17/2019 | Finalize and administer Leech Tishman employment order and declaration of non-opposition | $198.00 |
| 10/18/2019 | Review special counsel engagement agreement and terns | $198.00 |
| 10/21/2019 | Prepare application to employ special counsel | $1,386.00 |
| 10/22/2019 | Revise application to employ special counsel | $396.00 |
| 10/22/2019 | Prepare declarations in support of application to employ special counsel | $495.00 |
| 10/25/2019 | Review revised fee agreement with special counsel | $99.00 |
| 10/30/2019 | Prepare professional fee statement number 2 (September 2019) | $396.00 |

| Date | Description | Amount |
|---|---|---|
| 10/30/2019 | Email correspondence to W. Grajewski re: employment application and retainer agreement | $49.50 |
| 10/30/2019 | Revise professional fee statement no. 1 | $198.00 |
| 10/23/2019 | Drafting plan of reorganization | $833.00 |
| 11/8/2019 | Finalize motion to extend exclusivity and prepare declaration in support | $495.00 |
| 11/14/2019 | Edit, E-file via CM/ECF and administer to UST | $48.00 |
| 11/18/2019 | Prepare order granting motion to extend exclusivity periods | $495.00 |
| 11/19/2019 | Prepare notice of hearing on motion to extend exclusivity periods | $396.00 |
| 11/4/2019 | Review two fee statements to UST; comment | $119.00 |
| 11/11/2019 | Correspondence from IRS re: delinquent tax returns | $99.00 |
| 11/12/2019 | Email and correspondence from accountant re: response to inquiry about tax returns | $99.00 |
| 11/12/2019 | Various correspondence with Marquez of UST regarding requesting information; preparation of information regarding same | $654.50 |
| 11/18/2019 | Receipt and review FTB claim | $99.00 |
| 11/8/2019 | Review information and analysis for Drafting plan of reorganization | $1,428.00 |
| 11/18/2019 | Modification to motion to extend exclusivity; preparation of declaration in support; document review | $3,213.00 |
| 12/26/2019 | Review former plan; status reports; findings; and prior docket regarding claims for discovery responses; conference with Taber regarding same | $654.50 |
| 12/11/2019 | Review tentative ruling granting motion to extend exclusivity | $119.00 |
| 1/14/2020 | Edit Monthly Operating Report, E-file via CM/ECF and administer to US Trustee | $37.50 |
| 12/16/2019 | Telephone conference with client re: MOR | $99.00 |
| 12/16/2019 | Further telephone conference with client re: MOR and bank statements | $99.00 |
| 12/16/2019 | Review MOR and various correspondence with client regarding same; provide missing information | $238.00 |
| 1/31/2020 | Review stipulation and prior exclusivity order re: preparation of motion for further extension of exclusivity | $162.00 |
| 1/28/2020 | Correspondence with Grajewski and client regarding employment of speci | $180.00 |
| 1/27/2020 | Legal research regarding adequate assurance of future performance and drafting memorandum of law | $1,980.00 |
| 1/14/2020 | Email correspondence from W. Grajewski re: engagement | $54.00 |
| 2/14/2020 | Multiple correspondence with UST and client regarding UST compliance | $300.00 |
| 2/5/2020 | Prepare motion to extend exclusivity | $1,188.00 |
| 2/13/2020 | Edit, review Monthly Operating Report and supporting statements; email client for additional information | $37.50 |
| 2/14/2020 | Further preparation and revision of motion to extend exclusivity | $432.00 |
| 2/14/2020 | Review January 2020 MOR before filing | $108.00 |
| 2/17/2020 | Prepare declaration in support of motion to extend exclusivity | $756.00 |
| 2/17/2020 | Revise and finalize motion to extend exclusivity | $432.00 |

| 1 | 2/17/2020 | Prepare notice of hearing on motion to extend exclusivity | $432.00 |
|---|---|---|---|
| 2 | 2/18/2020 | Confirm coordination of hearing date and time on exclusivity motion with status conference time | $54.00 |
| 3 | 2/19/2020 | Finalize motion to extend exclusivity and notice of hearing | $216.00 |
| 4 | 2/26/2020 | Prepare chapter 11 status report | $1,512.00 |
|  | 2/28/2020 | Prepare exclusivity order | $648.00 |
| 5 | 2/28/2020 | Email correspondence regarding; status reports and quarterly fees | $54.00 |
| 6 | 2/19/2020 | Review and modify second motion to extend exclusivity | $1,380.00 |
| 7 | 3/10/2020 | Check Court's tentative rulings | $108.00 |
|  | 3/16/2020 | Review February 2020 MOR | $216.00 |
| 8 | 3/16/2020 | Edit Monthly Operating Report, e-file via CM/ECF and administer to UST | $125.00 |
| 9 | 3/23/2020 | Research regarding Section 365(d)(3) rent deferrals during crises; review lease | $660.00 |
|  | 3/23/2020 | Correspondence to Werth regarding stipulation and rent. | $180.00 |
| 10 | 3/24/2020 | Correspondence from Werth regarding rent abatement; preparation of response | $360.00 |
| 11 | 3/29/2020 | Drafting motion to defer rent | $1,020.00 |
| 12 | 3/31/2020 | Drafting motion for rent deferral under 365(d)(3) and supporting declarations | $3,360.00 |
| 13 | 3/23/2020 | Research re: deferral of rent and standards for court order | $756.00 |
| 14 | 3/23/2020 | Multiple email correspondence re: rental obligations | $162.00 |
|  | 3/24/2020 | Further research re: post-petition rent obligations | $864.00 |
| 15 | 3/24/2020 | Prepare notice of motion and motion for an order authorizing holding of rental payments and finding compliance with 365(d) (3) | $1,512.00 |
| 16 | | | |
| 17 | 3/24/2020 | Correspondence with Lampl regarding argument for abatement; conference with Mulvaney regarding motion under Section 365 (d)(3). | $300.00 |
| 18 | 3/24/2020 | Research regarding 365(d)(3) and rent abatement | $1,080.00 |
| 19 | 3/25/2020 | Prepare declarations in support of motion to pay rent in trust | $1,080.00 |
|  | 3/26/2020 | Prepare notice of hearing on motion re: rent payments | $540.00 |
| 20 | 3/27/2020 | Review rent statement etc. | $120.00 |
| 21 | 3/26/2020 | Drafting motion under 365(d)(3) to defer rent | $1,620.00 |
|  | 3/24/2020 | Review lease and amendment re: landlord breach and force majeure provisions | $918.00 |
| 22 | 3/26/2020 | Receipt and review property tax and utility invoices | $162.00 |
| 23 | 3/27/2020 | Review lease and amendment re: property tax and utility payments | $324.00 |
| 24 | 3/12/2020 | Prepare notice of bar date for filing proofs of claim | $432.00 |
|  | 3/12/2020 | Prepare order setting bar date for filing proofs of claim | $324.00 |
| 25 | 3/12/2020 | Prepare notice of motion and motion to establish bar date for filing proofs of claim or interest | $702.00 |
| 26 | 3/12/2020 | Revise order granting motion to extend exclusivity periods | $162.00 |
| 27 | 3/18/2020 | Finalize order on exclusivity motion | $108.00 |
| 28 | 3/18/2020 | Review and revise order for second extension of exclusivity | $360.00 |

| 4/1/2020 | Reviewed letters produced in discovery regarding potential violation of the automatic stay an email to Sandy Frey regarding the same | $186.00 |
|---|---|---|
| 4/17/2020 | review stipulation and order | $95.00 |
| 4/22/2020 | Reviewed the Order Approving Stipulation that Fadi emailed | $25.00 |
| 4/1/2020 | Emails to Sandy Frey regarding potential violation of the automatic stay | $46.50 |
| 4/29/2020 | Conference with Werth regarding April rent payment; and other matters | $120.00 |
| 4/28/2020 | Preparation for hearing on Motion to defer rent | $1,320.00 |
| 4/3/2020 | Finalize motion to defer rent | $1,020.00 |
| 4/22/2020 | Drafting reply re rent motion; research regarding police and regulatory powers | $840.00 |
| 4/22/2020 | Drafting reply to objection to motion to defer rent | $3,120.00 |
| 4/15/2020 | Review opposition to motion to defer rent under Section 365(d) (3); analysis; review case law cited | $600.00 |
| 4/27/2020 | Check for and Review tentative ruling regarding motion to defer rent | $180.00 |
| 4/29/2020 | Appear at hearing on Motion to defer rent | $1,320.00 |
| 4/8/2020 | Revise and finalize motion to establish bar date for filing claims | $432.00 |
| 4/14/2020 | Review March 2020 MOR and supporting documents | $216.00 |
| 4/14/2020 | Research property tax status | $162.00 |
| 4/15/2020 | Review bank statements in finalizing MOR | $162.00 |
| 4/15/2020 | Finalize MOR | $108.00 |
| 4/15/2020 | Research local and federal rules re: claims filing deadlines and procedures | $216.00 |
| 4/16/2020 | Finalize motion, notice and declaration re: bar date | $378.00 |
| 4/16/2020 | Review local rules re: notice and service of bar date motion | $162.00 |
| 4/16/2020 | Prepare order setting bar date for filing proofs of claim or interest | $324.00 |
| 4/16/2020 | Prepare service and no request for hearing declaration re: entry of order establishing bar date | $432.00 |
| 4/22/2020 | Review and revise reply to opposition re: rent deferral motion | $432.00 |
| 4/1/2020 | Revise notice of hearing on rent deferral motion | $324.00 |
| 4/1/2020 | Revise motion re: rent deferral | $540.00 |
| 4/2/2020 | Review final rent deferral motion | $216.00 |
| 4/3/2020 | Finalize notice of hearing on rent deferral motion and confirm hearing date availability | $216.00 |
| 4/15/2020 | Receive and respond to email from S. Frey regarding assisting with reply on Motion to Hold Rent Payments in Trust; Receive and review Opposition to the same; and begin drafting reply | $1,846.00 |
| 4/16/2020 | Legal research on Section 365 and 105 and drafting reply | $1,846.00 |
| 4/22/2020 | Research re: application of Section 105 of the bankruptcy code in the context of Section 365 | $756.00 |
| 4/29/2020 | Research re: City of Los Angeles emergency orders re: commercial leases | $270.00 |
| 4/29/2020 | Prepare submission of Covid-19 emergency orders in support of motion to defer rent | $864.00 |

| 4/30/2020 | Review and finalize supplement re: emergency orders in support of motion to defer rent | $216.00 |
|---|---|---|
| 4/1/2020 | Modify motion under 365(d)(3) | $780.00 |
| 4/17/2020 | Review order on 3rd stipulation; preparation of correspondence to firm and client regarding new dates | $300.00 |
| 4/23/2020 | Drafting correspondence to Werth regarding incident at club | $480.00 |
| 4/8/2020 | Review and revise Bar Date motion | $240.00 |
| 4/16/2020 | Review bar date motion and related documents | $240.00 |
| 4/16/2020 | Further modification to bar date motion; review applicable rules | $840.00 |
| 4/7/2020 | Run and review current claims register | $324.00 |
| 4/30/2020 | Following up on exclusivity | $120.00 |
| 5/5/2020 | Phone conference with Sandy Frey regarding motion to defer rent and related issues | $139.50 |
| 5/5/2020 | Drafting correspondence to Werth regarding payment of rent | $120.00 |
| 5/7/2020 | Prepare declaration in support of motion to extend exclusivity | $540.00 |
| 5/7/2020 | Prepare and revise motion to extend exclusivity | $864.00 |
| 5/14/2020 | Email correspondence from UST re: insurance and correspondence to client re: same | $108.00 |
| 5/14/2020 | Review insurance declarations | $108.00 |
| 5/15/2020 | Edit, Monthly Operating Report, E-file via CM/ECF and administer to US Trustee | $125.00 |
| 5/15/2020 | Update narrative on MOR re: case progress | $108.00 |
| 5/4/2020 | Preparation for hearing on motion to defer rent | $660.00 |
| 5/15/2020 | Modify rent deferral order; transmission to Werth; correspondence from Werth regarding same | $420.00 |
| 5/4/2020 | Appearance at hearing on rent deferral | $480.00 |
| 5/6/2020 | Prepare order on motion to defer rent | $756.00 |
| 5/11/2020 | Finalize order re: motion re: rent deferral | $216.00 |
| 5/14/2020 | Review scheduling order re: preparation of exclusivity motion | $108.00 |
| 5/15/2020 | Review NOL and final order re: rent deferral | $108.00 |
| 5/27/2020 | Research California legislation re: commercial tenancies | $108.00 |
| 5/19/2020 | Begin preparation of motion to approve use of property for religious service events | $1,080.00 |
| 5/19/2020 | Research re: emergency equitable relief and use of estate property | $756.00 |
| 5/20/2020 | Prepare notice of hearing on motion for approval of use of property | $648.00 |
| 5/20/2020 | Prepare motion to approve use of property for religious service events | $864.00 |
| 5/26/2020 | Preparation and revision of motion to approve use of property for religious service events and declaration in support | $1,620.00 |
| 5/26/2020 | Review May 25, 2020 California guidelines for permitting religious gatherings | $216.00 |
| 5/29/2020 | Research re: California lease issues | $540.00 |
| 5/26/2020 | Search and Review emails regarding Fearless Church; conference with Mulvaney regarding same | $420.00 |

| 1 | 5/27/2020 | Drafting religious use motion | $1,320.00 |
|---|---|---|---|
| 2 | 5/29/2020 | Drafting Motion to approve church; internet research re Fearless Church | $2,640.00 |
|   | 5/15/2020 | Receipt and review entered order setting claims bar date | $108.00 |
| 3 | 5/15/2020 | Revise notice of claims bar date | $216.00 |
| 4 | 5/1/2020 | Finalize declaration of no opposition and order setting bar date for filing proofs of claim | $432.00 |
| 5 | 5/5/2020 | Revise order setting bar date and declaration re: non-opposition | $216.00 |
| 6 | 5/7/2020 | Revise and finalize declaration re: non-opposition and order re: bar date | $216.00 |
|   | 5/4/2020 | Prepare motion to extend exclusivity periods | $1,080.00 |
| 7 | 5/15/2020 | Prepare notice of hearing on motion to extend exclusivity | $540.00 |
| 8 | 6/1/2020 | Review and revise Motion for an Order Authorizing the Use of the Leased Premises for Religious Service Events | $475.00 |
| 9 | 6/17/2020 | Approve final changes to reply related to Church motion. | $315.00 |
| 10 | 6/1/2020 | Conference and review motion for impounding of rent and potential relief for June and July rent pending trial on assumption issues | $90.00 |
| 11 | | | |
| 12 | 6/2/2020 | Review revised Motion for an Order Authorizing the Use of the Leased Premises for Religious Service Events | $332.50 |
| 13 | 6/2/2020 | Church motion (final version); file follow up. (ff) | $315.00 |
| 14 | 6/18/2020 | Review and respond to email from Sandy regarding church motion and reply; file follow up | $126.00 |
| 15 | | | |
| 16 | 6/26/2020 | Review church motion tentative ruling; exchange of correspondences to and from client and counsel re tentative ruling | $190.00 |
| 17 | 6/17/2020 | Teleconference and exchange of correspondences to and from S Frey and D Mulvaney re revisions to reply to opposition to church motion | $380.00 |
| 18 | 6/25/2020 | Receipt and review of correspondence from W McAbian re | $47.50 |
| 19 | 6/2/2020 | Review and revise motion to permit church services; emails with Fadi and Sandy. | $630.00 |
| 20 | 6/15/2020 | Review May 2020 MOR and supporting documents | $162.00 |
| 21 | 6/15/2020 | Finalize monthly operating report, E-file via CM/ECF and administer to the US Trustee | $125.00 |
| 22 | 6/29/2020 | Prepare chapter 11 status report for July 17, 2020 status hearing | $864.00 |
| 23 | 6/5/2020 | Legal research regarding impounding rent and telephone call with S. Frey regarding the same | $674.50 |
| 24 | 6/1/2020 | Revise and finalize notice of hearing on motion for order authorizing use of property | $324.00 |
| 25 | 6/2/2020 | Review and revision of motion for order authorizing use of property for religious services | $324.00 |
| 26 | 6/2/2020 | Revise and finalize notice of hearing on motion for order authorizing use of leased premises for religious events | $216.00 |
| 27 | | | |
| 28 | 6/3/2020 | Compile exhibits and finalize use motion | $540.00 |
|   | 6/3/2020 | Drafting use motion and notice | $216.00 |

| 6/15/2020 | Research re: real property issues and cases raised in use motion and opposition | $1,080.00 |
|---|---|---|
| 6/15/2020 | Prepare reply to landlord's opposition to use motion | $2,160.00 |
| 6/17/2020 | Further research re: real property issues in conjunction with use motion | $1,080.00 |
| 6/17/2020 | Preparation and revision of reply to opposition to use motion | $1,944.00 |
| 6/26/2020 | Email correspondence re: tentative ruling | $54.00 |
| 6/29/2020 | Update relate to Church order; review 6/28 LA County Health Order related to client operations; file follow up. (ff) | $315.00 |
| 6/29/2020 | Attend hearing on church motion | $840.00 |
| 6/3/2020 | Revise motion to approve church events; legal research regarding sublease vs license | $1,980.00 |
| 6/16/2020 | Review objection to church motion; revise reply to objection to church motion | $1,980.00 |
| 6/17/2020 | Modify reply to church objection | $2,160.00 |
| 6/28/2020 | Preparation for church motion hearing; review all pleadings; preparation oral argument | $1,380.00 |
| 6/1/2020 | Revise and finalize motion to extend exclusivity periods | $756.00 |
| 6/2/2020 | Prepare notice of hearing on motion to extend exclusivity periods | $540.00 |
| 6/3/2020 | Prepare order on exclusivity motion (third) | $540.00 |
| 6/3/2020 | Drafting motion for third exclusivity extension | $1,020.00 |
| 6/25/2020 | Revise and finalize order extending exclusivity periods | $216.00 |
| 6/29/2020 | Telephone calls to court and department clerks at the United States Bankruptcy Court regarding appearing for the hearing on Third Exclusivity Motion | $62.50 |
| 7/1/2020 | Prepare chapter 11 case management statement | $432.00 |
| 7/15/2020 | Edit, Monthly Operating Report, E-file via CM/ECF and administer to US Trustee | $125.00 |
| 7/15/2020 | Review final June 2020 MOR | $162.00 |
| 7/9/2020 | Finalize exclusivity order | $108.00 |
| 7/9/2020 | Preparation of order approving church motion | $1,020.00 |
| 7/13/2020 | F Finalize and forward Order approving church motion; correspondence to Werth | $240.00 |
| 7/2/2020 | Multiple correspondence with client regarding claims bar date and plan; review claims register | $240.00 |
| 7/16/2020 | Run and review claims register and review all claims filed by claims bar date | $756.00 |
| 8/4/2020 | Communicate with S. Frey regarding Research | $1,700.00 |
| 8/5/2020 | Research | $425.00 |
| 8/6/2020 | Research | $425.00 |
| 8/7/2020 | Draft ex parte application for order granting relief from local rules 37-1 and 37-2 | $792.00 |
| 8/3/2020 | Phone conference with Sandy Frey regarding lease issues | $186.00 |
| 8/3/2020 | Email communications with Sandy Frey regarding lease issues | $93.00 |
| 8/13/2020 | Edit Monthly Operating Report, sent to S. Frey and D. Mulvaney for review | $37.50 |

| | | |
|---|---|---|
| 8/13/2020 | Review July 2020 MOR | $108.00 |
| 8/17/2020 | Edit Monthly Operating Report, e-file via CM/ECF and administer to UST | $125.00 |
| 8/14/2020 | Correspondence to Werth regarding vandalism and insurance | $120.00 |
| 8/3/2020 | Research | $540.00 |
| 8/4/2020 | Receipt and review loan documents for proposed SBA loan and DIP financing | $216.00 |
| 8/4/2020 | Research re: filming requirements in Los Angeles County | $972.00 |
| 8/5/2020 | Preparation of motion for order approving DIP financing | $648.00 |
| 8/5/2020 | Research re: DIP financing and local requirements | $540.00 |
| 8/5/2020 | Prepare supplemental notice of Zoom hearing for DIP financing motion | $216.00 |
| 8/6/2020 | M Prepare DIP financing motion | $972.00 |
| 8/6/2020 | Prepare required Central District of California statement re: DIP financing | $324.00 |
| 8/7/2020 | Prepare notice of hearing on motion for DIP financing | $432.00 |
| 8/10/2020 | Prepare motion for order approving DIP financing | $1,620.00 |
| 8/10/2020 | Review SBA disaster loan documents | $324.00 |
| 8/11/2020 | Prepare declaration in support of motion for order authorizing DIP financing | $972.00 |
| 8/11/2020 | Further preparation of DIP financing motion | $1,080.00 |
| 8/12/2020 | Prepare order authorizing DIP financing | $756.00 |
| 8/12/2020 | Revise and finalize motion for order authorizing DIP financing | $756.00 |
| 8/18/2020 | Prepare notice of hearing on motion to approve use of property for virtual music events and film shooting | $324.00 |
| 8/19/2020 | Revise order approving DIP financing | $108.00 |
| 8/19/2020 | Prepare required Zoom hearing notices for DIP Financing Motion and Virtual DJ Motion | $216.00 |
| 8/27/2020 | Review and analysis of Landlord's opposition to motion for order authorizing use of premises for virtual music events and film shoots | $432.00 |
| 8/27/2020 | Research Los Angeles City records re: building and occupancy permits and history | $324.00 |
| 8/27/2020 | Prepare reply to landlord's opposition to motion to approve post-petition financing | $1,080.00 |
| 8/27/2020 | Research re: use provisions | $864.00 |
| 8/28/2020 | Prepare reply to opposition to motion for use of property for Virtual DJ Events and Filming | $2,700.00 |
| 8/28/2020 | Research re: use provisions and 363 use | $756.00 |
| 8/29/2020 | Research re: UCC security and grant of security interest in personal property only | $810.00 |
| 8/29/2020 | Prepare reply to opposition to motion to allow DIP Financing | $1,620.00 |
| 8/29/2020 | Prepare and revise reply to opposition to motion to allow virtual events and filming | $864.00 |
| 8/10/2020 | Legal research and Drafting motion to approve filming | $1,140.00 |
| 8/4/2020 | Research for motion for virtual concerts and filming; drafting motion | $1,380.00 |
| 8/12/2020 | Drafting motion to approve virtual filming | $2,640.00 |

| Date | Description | Amount |
|---|---|---|
| 8/13/2020 | Modify motion for virtual filming | $1,020.00 |
| 8/14/2020 | Further modifications to Virtual Film motion | $720.00 |
| 8/17/2020 | Drafting virtual events motion | $1,680.00 |
| 8/18/2020 | Drafting motion to approve Virtual Events and Filming | $1,320.00 |
| 8/19/2020 | Drafting virtual events motion | $2,460.00 |
| 8/31/2020 | Drafting reply to objection to virtual filming motion | $2,220.00 |
| 8/13/2020 | Modify DIP motion | $2,220.00 |
| 8/13/2020 | Conference with accountant regarding DIP financing | $180.00 |
| 8/18/2020 | Modify motion for DIP Financing | $780.00 |
| 8/13/2020 | Multiple correspondence with Shinbrot regarding financing motion | $180.00 |
| 9/2/2020 | Edits including adding styles to Reply to Motion regarding Virtual Events Motion,<br>compile exhibits, add page numbers, run TOA/TOC prepare for filing and file via CM/ECF | $375.00 |
| 9/2/2020 | Edit, format, and finalize Reply to Opposition to Post-Petition Financing; file via CM/ECF | $162.50 |
| 9/14/2020 | Review and finalize August MOR | $162.00 |
| 9/15/2020 | Edit and finalize Monthly Operating Report, file via CM/ECF and administer to<br>US Trustee's Office | $125.00 |
| 9/18/2020 | Prepare errata of hearing time re: motion to extend exclusivity | $216.00 |
| 9/29/2020 | Prepare Chapter 11 case management status report | $1,080.00 |
| 9/1/2020 | Prepare declaration of F. Rasheed re: deposition transcript of M. Chang in support of reply to opposition to motion for use of property for virtual events and filming | $324.00 |
| 9/1/2020 | Prepare and revise declaration of Adi McAbian in support of reply to landlord's opposition to virtual event and filming motion | $432.00 |
| 9/1/2020 | M Review deposition transcript and exhibits re: preparation of reply to virtual events<br>opposition and declarations in support | $432.00 |
| 9/1/2020 | Revise reply to oppositions to virtual entertainment and DIP financing motions | $1,080.00 |
| 9/1/2020 | Research re: perfection of security interests in real property leases | $432.00 |
| 9/2/2020 | Prepare declaration of S. Frey in support of reply to opposition to DIP financing motion | $432.00 |
| 9/3/2020 | Research re: willful violations of automatic stay, contempt proceedings and tortious<br> interference with business | $1,296.00 |
| 9/9/2020 | Research re: landlord breach and interference with business | $756.00 |
| 9/11/2020 | Research and revision of DIP order re: compliance with LOU rules | $162.00 |
| 9/14/2020 | Review revisions to virtual music and filming order | $54.00 |
| 9/15/2020 | Research for motion for OSC re: contempt for violation of the automatic stay | $1,080.00 |
| 9/9/2020 | Preparation for hearings on DIP Motion and Virtual Events; review pleadings | $1,020.00 |

|  |  |  |
|---|---|---|
|  | and cases |  |
| 9/1/2020 | Revise reply to opposition to virtual events; numerous correspondence with client regarding same; review exhibits | $2,160.00 |
| 9/2/2020 | Modify reply to opposition to virtual events; numerous correspondence regarding same | $1,440.00 |
| 9/10/2020 | Drafting order regarding virtual events | $840.00 |
| 9/11/2020 | Modifications to Virtual events order regarding Werth changes and insurance issues; correspondence with client; review insurance policy | $1,440.00 |
| 9/16/2020 | Modify order regarding virtual events and filming | $360.00 |
| 9/11/2020 | Negotiations with Werth regarding Virtual events Order; review Werth changes; conference with client regarding provision of order pertaining to prepetition and post-petition reservation of rights and insurance | $1,020.00 |
| 9/1/2020 | Preparation of reply to opposition to DIP motion | $1,020.00 |
| 9/2/2020 | Preparation of reply to opposition to DIP motion | $1,080.00 |
| 9/7/2020 | Drafting order re DIP Financing; correspondence to US Attorney regarding order | $540.00 |
| 9/10/2020 | Drafting order regarding DIP Financing | $540.00 |
| 9/11/2020 | Revise DIP order per Local Rules; correspondence with Werth regarding same | $240.00 |
| 9/7/2020 | Correspondence with SBA counsel regarding form of order approving DIP Loan | $180.00 |
| 9/9/2020 | Correspondence with counsel for SBA regarding hearing on DIP Motion | $120.00 |
| 9/4/2020 | Conference with Attorney for SBA regarding loan | $120.00 |
| 9/11/2020 | Correspondence with counsel for SBA regarding form of order on DIP financing | $180.00 |
| 9/30/2020 | Various Correspondence with counsel for SBA regarding status report and cash collateral issues | $240.00 |
| 9/9/2020 | Attend hearings on DIP Motion and virtual events | $540.00 |
| 9/11/2020 | Research re: outside extensions for exclusivity periods | $108.00 |
| 9/11/2020 | Prepare motion to extend exclusivity periods | $1,620.00 |
| 9/11/2020 | Prepare notice of hearing on motion extend exclusivity periods | $324.00 |
| 9/15/2020 | Prepare and finalize motion to extend exclusivity and declaration in support | $540.00 |
| 9/21/2020 | Prepare order granting motion to extend exclusivity periods | $648.00 |
| 4/22/2020 | review reply to opposition to motion for debtor to withhold rent payments | $142.50 |
| 4/29/2020 | Teleconference and exchange of correspondences to and from S Frey, J Shinbrot, D Mulvaney W McAbian and P Toomey re motion to defer rent and commercial eviction orders by CA | $332.50 |
| 5/15/2020 | Receipt and review of proposed order re rent deferral motion | $47.50 |
| 5/5/2020 | Receipt and review of correspondence from S Frey and P Toomey re motion to defer | $47.50 |

| | | |
|---|---|---|
| 5/5/2020 | Receipt and review of correspondence from W McAbian re rent payment | $47.50 |
| 6/29/2020 | Attend hearing on church motion; plan and prepare for said hearing | $380.00 |
| 7/9/2020 | Review WERM order on Church Motion | $47.50 |
| 7/10/2020 | Review Revised Church Motion Order | $47.50 |
| 7/20/2020 | Email from Sandford L. Frey, regarding "Hawkeye - Entered Odr Approving Religious Event; review said order | $47.50 |
| 7/13/2020 | Email from Sandford L. Frey to opposing counsel regarding "Hawkeye Church Serv Order". | $47.50 |
| 7/20/2020 | Drafting correspondence to Werth regarding vandalism and trial; communication with client and counsel regarding same | $180.00 |
| 9/1/2020 | Receipt and review of emails to and from D Mulvaney, S Frey and P Toomey re Hawkeye Revised Reply re Filming; review Reply to Filming Motion | $237.50 |
| 9/1/2020 | Review revised reply to opposition to Film Motion | $95.00 |
| 9/14/2020 | review "Order on Filming ". | $95.00 |
| 9/11/2020 | Emails from Werth, Steven F., regarding "RE: Hawkeye - Virtual Events Order | $95.00 |
| 9/16/2020 | emails from S Frey, clients, and J Shibrot re events order | $142.50 |
| 9/9/2020 | Attend hearing on virtual DJ motion; plan and prepare for said hearing | $237.50 |
| 10/1/2020 | Reviewed email from S. Frey to SBA counsel regarding cash collateral | $46.50 |
| 10/9/2020 | Finalize exclusivity order | $162.00 |
| 10/15/2020 | Edit Monthly Operating Report, e-file via CM/ECF and administer to UST | $125.00 |
| 10/15/2020 | Review and finalize September 2020 MOR | $162.00 |
| 10/28/2020 | Review invoices and email to M. Scott re: generating invoices for motion for attorneys' fees and costs | $108.00 |
| 10/1/2020 | Various correspondence with counsel for SBA regarding cash collateral issues | $180.00 |
| Total Reduction in Attorney's Fees | | $207,179.50 |

//
//
//
//
//
//
//
//
//

| Expenses | |
|---|---|
| Postage | $14.90 |
| Postage | $144.50 |
| Postage | $73.73 |
| Postage | $36.36 |
| Parking Fee | $2.00 |
| Parking Meeting with Client | $12.00 |
| Postage | $93.28 |
| Postage | $19.30 |
| Postage & Delivery | $19.00 |
| Total Reduction | $415.07 |

Total Attorney's Fees and Expense Award: $605,937.40.

### ###

Date: February 19, 2021

Maureen A. Tighe
United States Bankruptcy Judge